No. 2--99--1346

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

FOREST GLEN COMMUNITY ) Appeal from the Circuit Court

HOMEOWNERS ASSOCIATION, ) of Du Page County.

)

     Plaintiff-Appellee, )

) 

v. ) No. 98--CH--0590

)

JOHN S. BISHOF, JR., and ) 

ANTOINETTE A. BISHOF, ) Honorable

) John W. Darrah,

Defendants-Appellants.  ) Judge, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants, John Bishof and Antoinette Bishof, appeal from the judgment of the circuit court of Du Page County granting the motion of plaintiff, Forest Glen Community Homeowners Association (Association), for summary judgment and denying defendants’ motion for summary judgment and from the court’s order granting plaintiff’s petition for attorney fees.  We affirm.

Defendants own a lot, approximately the size of one-half acre, located in the Forest Glen subdivision in Oak Brook, Illinois.  The owner or owners, collectively, of each lot in this subdivision are  members of the Association.  
Prior to 1996, each member had paid the same annual assessment of $127.50.  This figure had been arrived at by multiplying the subdivision’s minimum lot size of 15,000 square feet by $0.085.  In 1996, the Association
's board of directors (board) voted to calculate assessments by multiplying the actual square footage of each member's lot by $0.085.  Because defendants’ lot is larger than 15,000 square feet, their annual assessment increased by $64.57 to a total of $192.07.  Thus, even though the board's action in 1996 did not change the assessment rate of $0.085, defendants' assessment increased because the rate of $0.085 was multiplied by the actual square footage of their lot rather than 15,000 square feet.

On February 23, 1996, the board sent to each member a letter that stated:

"Prior Boards used the smallest allowable lot size per zoning (15,000 sq. ft. x $0.085 = $127.50) because they did not have the actual lot sizes.  The board feels that in order to replace the plantings lost over the past several years we need to increase the assessment to the maximum allowed within our covenants."

Defendants initially refused to pay their assessment, explaining to the board in a letter dated February 29, 1996, that they believed it was "fair" for them to pay $127.50 but they did not want to pay the increased assessment because most of the rear portion of their lot was "encumbered by an easement for a detention pond which fills after every rainfall," the water detention was a "constant source of aggravation," the backyard had been "resown twice due to malfunctions of the drainage system that is assembled beneath the surface," and they were deprived of any "enjoyment" of their backyard in that they could not build on it or excavate for a swimming pool.  At that time, defendants did not contest the board’s authority to establish the annual assessment for 1996.  On February 29, 1996, the board rejected defendants’ request for "special consideration."

On June 3, 1997, defendants paid $255.00, or $127.50 on their 1996 assessment and $127.50 on their 1997 assessment.  Defendants explained in a letter that accompanied their payment that they "deducted costs incurred in mantaining [
sic
] the detention easement" located in their backyard "as a result of soil erosion, reseeding and removal of debris."  We note that the difference between the assessments they owed and the assessments they paid is $64.57 for each year and that this is the exact amount of the increase in defendants’ assessments.

On May 1, 1998, the Association filed a lien against defendants’ lot, claiming that $489.70 was owed.  On June 1, 1998, the Association filed a two-count complaint against defendants.  In count I of the complaint, the Association sought the foreclosure of defendants’ property to satisfy the payment of the lien if defendants persisted in their refusal to pay.  Count II of the complaint alleged breach of contract in that defendants had agreed to pay assessments when they bought the lot but that defendants failed to pay and now owed $489.70 in unpaid assessments and late fees.  The Association also sought from defendants reimbursement of attorney fees and costs.  An amended complaint was filed on July 8, 1998, but the amended complaint differed from the original complaint only in that a copy of the Association’s "Declaration of Easements, Covenants and Restrictions for Forest Glen" (declaration) was attached as an exhibit.

The Association moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (
735 ILCS 5/2–1005(c) (West 1998)), alleging that the board was authorized under the declaration and under the "By-Laws of the Forest Glen Community Homeowners’ Association" (bylaws) to employ the "proper formula" in calculating the assessments for 1996, which was also used in 1997 and 1998.

Defendants also moved for summary judgment.  Defendants abandoned their position that they were justified in offsetting their assessment by the costs of maintaining the easement for the detention pond.  Defendants argued, for the first time, that neither the declaration nor the bylaws authorized the board’s decision to increase the "rate" in calculating annual assessments and that, according to the declaration and bylaws
, an increase in assessments must be approved by two-thirds of the membership of the Association.  Defendants also argued, for the first time, that their 1996 assessment was incorrect because the board miscalculated defendants’ lot size by including in its calculation the area located within the easement for the detention pond.

On August 11, 1999, the trial court granted the Association’s motion for summary judgment, denied defendants’ motion for summary judgment, and ordered defendants to pay $489.70, interest at the rate of 1.5% per month from May 1, 1998, and costs of the suit.  The court reserved ruling on the issues relating to attorney fees and costs until after the Association filed a petition.  On October 28, 1999, the court granted the petition for fees and costs brought by the Association and ordered defendants to pay $6,107 for the Association’s attorney fees plus costs of $258.  Defendants filed this timely appeal.

A trial court should grant summary judgment only if, after construing the evidence in the light most favorable to the nonmoving party, "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005(c) (West 1998); 
Hubert v. Consolidated Medical Laboratories
, 306 Ill. App. 3d 1118, 1125 (1999).  We review a trial court's entry of summary judgment 
de novo
.  
Hubert
, 306 Ill. App. 3d at 1125.

Defendants first contend that the board’s decision to increase the annual assessment for 1996 was not authorized in the declaration or the bylaws and that the annual assessment could only be increased after such an increase was approved by two-thirds of the membership of the Association.  Alternatively, defendants argue that the language of the declaration and bylaws, which authorizes an increase in annual assessments, is ambiguous and that, where the language is ambiguous, it should be "construed against those parties seeking to enforce it."  The cases defendants cite for this proposition do not support it.  
Lakeland Property Owners Ass'n v. Larson
, 121 Ill. App. 3d 805, 810 (1984), actually addresses the issue of the presumption in favor of natural rights and against restrictions when construing a restrictive covenant.  Moreover, while 
Sinnissippi Apartments, Inc. v. Hubbard
, 114 Ill. App. 3d 151 (1983), addresses the interpretation of the language of the "Shareholder’s Proprietary Lease," the court’s analysis did not focus on language that was ambiguous but, rather, on the meaning of the plain language contained in that lease.

In any event, we agree with the trial court and find no ambiguity in the following sections from the declaration and the bylaws that are relevant to our resolution of this issue.  Article VIII, section 6, of the declaration provides, in pertinent part:

"Assessment Procedure. Regular Assessments.

1.  From and after January 1, 1978, the regular assessments shall be determined by the affirmative vote of two-thirds (2/3) of the Board of Directors of the Association, as provided in this Declaration and the By-Laws of the Association *** and the maximum annual rate of assessment which may be levied for any year shall be 85/100ths of a cent per square foot."

Section 2(c)(i) of article IX of the bylaws provides, in pertinent part:

"It shall be the duty of the Board of Directors to ***  [c]onduct a regular meeting of the Board of Directors on or before December 1st
 of each year for the purpose of determining the regular assessment against each lot prior to such regular assessment period."

Section 9 of article VII of the bylaws provides:

"The act of a majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, except when the Board shall consider the following matter, set forth at length in the Declaration:

(a) The fixing of the amount of all regular assessments.

In this case, the affirmative vote of two-thirds (2/3) of the Board of Directors present at a meeting at which a quorum is present shall be necessary to adopt any measure with respect thereto."

Defendants point to language in section 5 of article VI of the bylaws that, they contend, contradicts the proposition that the board was authorized to establish the annual assessment for 1996.  Article VI addresses "MEETINGS OF MEMBERS," and section 5 provides, in pertinent part:

"Quorum:

* * *

In the event the Membership shall consider *** the levying of regular assessments larger than the previous year’s regular assessment, *** such matter or matters shall be adopted at a Membership meeting at which a quorum is present upon the affirmative vote of two-thirds (2/3) of the entire Membership, except as provided for in ARTICLE VIII, Section 6, 1, of the Declaration."

The rules of construction for contracts govern our interpretation of the covenants contained in the declaration.  See 
Seven Bridges Courts Ass'n v. Seven Bridges Development, Inc.
, 306 Ill. App. 3d 697, 705 (1999).  A contract is ambiguous if it is reasonably susceptible to more than one meaning, but contractual language is not rendered ambiguous simply because the parties disagree on its meaning.  
Seven Bridges
, 306 Ill. App. 3d at 705-06.  The interpretation and construction of a contract are  matters to be determined by a court as questions of law.  
The Streams Club, Ltd. v. Thompson
, 180 Ill. App. 3d 830, 838 (1989).  The meaning of the provisions of a contract must be determined from the language, and we will not arrive at a construction that runs contrary to the plain and ordinary meaning of the language used.  
Konewko v. Kidder, Peabody & Co.
, 173 Ill. App. 3d 939, 943 (1988), citing 
Tate v. Wabash Datatech, Inc.
, 147 Ill. App. 3d 230, 236 (1986).

In this case, the language of the declaration and of the bylaws is unambiguous and clearly vests in the board the authority to establish the amount of the annual assessments.  That language further provides that the board may establish the annual assessments at a maximum rate of "85/100ths of a cent per square foot."  The board did, in fact, establish the assessment for 1996 based on the maximum rate of $0.085 of a cent per square foot of property.  We reject defendants’ interpretation of section 5 of article VI of the bylaws and read this language, giving the language its plain and ordinary meaning, as providing that matters relating to "the levying of regular assessments larger than the previous year’s regular assessment," if accomplished through article VIII, section 6(1), of the declaration, need not be adopted through a vote of the membership.  Thus, we conclude that the board acted within the scope of its duties when it employed the proper formula in establishing the annual assessment for 1996.

Defendants also contend that their assessments were improper in that the board incorrectly calculated their lot size, including in that calculation the area within the easement for the detention pond.  We disagree.

The plain language of the declaration requires that the board calculate the assessment by multiplying the actual square footage of a lot by the rate selected by the board.  Article II, section 14, of the declaration defines the term "lot area" as "[t]he area of a horizontal plane bounded by lot lines."  Although the declaration also provides that this definition would be modified to make it consistent with the zoning ordinance of the Village of Oak Brook (Village) if it is inconsistent with that language, no such inconsistency exists.  The Village’s zoning ordinance defined "lot area" as follows:

"The area of a horizontal plane bounded by lot lines.  For the purposes of meeting minimum lot area requirements, the land area of a lot used for providing private access rights of way shall not be included."  Oak Brook Village Code, Appendix A,  §XIV(77) (amended June 8, 1993).

The rules that govern the construction of statutes are also applied in the construction of municipal ordinances.  
Crawford v. City of Chicago
, 304 Ill. App. 3d 818, 823 (1999).  The construction of a statute requires the identification of legislative intent and the effect it should be given.  
Crawford
, 304 Ill. App. 3d at 823.  The most reliable indicator of legislative intent is the statute’s language and, where it is clear and unambiguous, the plain and ordinary meaning of the words will be given effect.  
Crawford
, 304 Ill. App. 3d at 823.

Given these rules of construction, and in light of the clear and unambiguous language of the zoning ordinance, we find that the board correctly included the area within the easement for the detention pond in its calculation of defendants’ easement.  The limiting language of the ordinance would not affect the board’s calculation and would not apply in this case, where the determination of the lot size is for the sole purpose of calculating defendants’ annual assessment.  Defendants do not dispute that the area located within the easement for the detention pond is also located within their lot lines.  Hence, the board’s determination of defendants’ "lot area," for this narrow purpose, would properly include the square footage of the easement for the detention pond.

The lack of merit of defendants’ arguments now on appeal is highlighted by the fact that they did not initially complain that the board lacked the authority to establish the annual assessment for 1996 nor did they complain that the board incorrectly calculated their lot area.  Instead, defendants offered to pay a portion of their assessment and complained about the $64.57 increase because they could not fully "enjoy" their backyard.  Then, defendants paid a portion of the assessments due, but explained that they deducted costs of maintenance of their backyard, which amounted to $64.57 for 1996 and $64.57 for 1997, precisely the amount of the increase in their assessment.  Coincidence or not, defendants fail to point to any language in the declaration or the bylaws that authorizes their unilateral decision to offset their assessment by their own maintenance costs.

Lastly, defendants contend that the court erred in awarding attorney fees and costs to the Association.  Defendants acknowledge that an award of attorney fees and costs would be authorized under article VII, section 8, of the declaration in cases where lot owners refuse to pay their assessments.  That section provides, in pertinent part, as follows:

"Any assessments, regular or special, which are not paid on the due date shall be delinquent. *** The Association may recover any delinquent assessments by bringing an action at law or in equity against the then Owner personally obligated to pay the same or foreclose the lien against the Lot.  Such recovery shall include interest, costs and reasonable attorneys’ fees incurred in connection with any such action."

Defendants do not challenge the amount of the award.  Rather, defendants argue that the award was improper where their challenge to the annual assessment was legally justified and not capricious.

Such an argument would be relevant if the fee award had been entered pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), but it was not.  Fees and costs were awarded pursuant to article VII, section 8, which is unambiguous and contemplates the recovery of expenses for attorney fees and costs incurred in any legal determination necessary to recover delinquent assessments.  The board properly established defendants’ annual assessments, and defendants admit they refused to pay the full amount.  Defendants’ assessments then became delinquent.

Defendants were solely responsible for the manner in which they chose to contest their assessments.  Since defendant John S. Bishof, Jr., is a lawyer and represented himself and his wife, they may not have incurred legal fees in litigating this $60 dispute over the assessment of a one-half-acre lot in Oak Brook.  But they knowingly took the risk that their arguments, which, incidentally, we have found to be without merit, would fail and this $60 dispute would result in liability for several thousand dollars of legal fees.  As we noted above, defendants have acknowledged that the declaration provides that they are liable for fees and costs, and they have not contested the amount.  We agree with the trial court that defendants are liable for fees and costs pursuant to the declaration.

In conclusion, the board acted within the scope of its duties when it employed the proper formula in establishing the annual assessment for 1996.  Defendants’ annual assessment was calculated by multiplying the actual square footage of their lot by the rate of $0.085.  We find no support for defendants’ conclusion that the board incorrectly determined the square footage of their lot where the calculation of the assessment correctly included the area located within the easement for the detention pond.  Once the board established the proper assessments, defendants were obligated to pay them.  Defendants owed the Association reimbursement of attorney fees and costs where the Association brought legal action to recover defendants’ delinquent assessments.  Thus, as there are no genuine issues of material fact, the court properly granted summary judgment to the Association, denied defendants’ motion for summary judgment, and awarded the Association attorney fees and costs.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Du Page County granting the Association’s motion for summary judgment and the court’s order granting the Association’s petition for attorney fees and costs.

Affirmed.

HUTCHINSON, P.J., and RAPP, J., concur.