# Illinois Official Reports

## Appellate Court

---

### *Sherwood Commons Townhome Owners Ass'n v. DuBois,*
### 2020 IL App (3d) 180561

---

Appellate Court
Caption

SHERWOOD COMMONS TOWNHOME OWNERS ASSOCIATION, INC., Plaintiff-Appellant, v. RICARDO J. DuBOIS and ALL UNKNOWN OCCUPANTS, Defendants (Ricardo J. DuBois, Defendant-Appellee).

District & No.

Third District
No. 3-18-0561

Filed

April 2, 2020

Decision Under
Review

Appeal from the Circuit Court of Will County, No. 18-LM-1067; the Hon. Brian E. Barrett, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

Stuart A. Fullett, Jeffrey D. Swanson, and Benjamin D. Rios, of Fullett Swanson PC, of Lake Zurich, for appellant.

Ricardo J. DuBois, of Bolingbrook, appellee *pro se*.

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Wright concurred in the judgment and opinion.


**OPINION**

¶ 1        The plaintiff, Sherwood Commons Townhome Owners Association, Inc., appeals the Will County circuit court's judgment in favor of the defendant, Ricardo J. DuBois. The plaintiff argues that the court erred in finding that (1) the former Forcible Entry and Detainer Act did not apply and (2) the defendant was not liable for breach of contract.

¶ 2                                I. BACKGROUND

¶ 3        On May 10, 2018, the plaintiff filed a two-count complaint entitled "Complaint for Possession of Unit and Common Expenses" against the defendant. The complaint alleged that the defendant was the owner of a townhome wherein the plaintiff administered the property. According to the complaint, the plaintiff was "a common interest community" association "granted the authority to administer the property pursuant to the Illinois Condominium Property Act [(Condominium Act) (765 ILCS 605/1 *et seq.* (West 2018))], and/or the Illinois Common Interest Community [Association] Act [(Common Interest Community Act) (765 ILCS 160/1-1 *et seq.* (West 2018))]." Based on the plaintiff's declaration and bylaws, the defendant was obligated to pay its share of the common expenses. Count I sought possession of the defendant's unit, alleging that, pursuant to the former Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2018); see also Pub. Act 100-173 (eff. Jan. 1, 2018) (replacing most references to "forcible entry and detainer" with "eviction")), it had the right to evict the defendant to collect the unpaid assessments. Count II alleged breach of contract, stating that, by accepting a deed to the unit, the defendant agreed to be bound by the plaintiff's governing documents, including that the defendant was responsible for paying his share of the common expenses.

¶ 4        According to a notice sent to the defendant on December 13, 2017, the defendant owed $998.62 "for the proportionate share of the expenses of administration, maintenance and repair of the common elements/areas and other expenses lawfully agreed upon due and owing" plus $265.02 in legal fees and costs for a total of $1263.64. The notice further provided the defendant had 30 days to dispute the validity of the debt. Attached to the complaint were two ledgers. One ledger was from American Utility Management (AUM) dated December 6, 2017, that stated it was a "Unit Account Ledger Report for Sherwood Commons" and just listed monthly statement charges and late payment charges for the defendant's unit. The other was a financial transactions ledger from the plaintiff with the last assessment dated December 11, 2017, and included charges solely listed as assessments, attorney fees, late fees, and collection fees.

¶ 5        The plaintiff's declaration included a list of definitions. It defined "Common Assessment" as "The amounts which the Association shall assess and collect from the Owners to pay the Common Expenses and accumulate reserves for such expenses, as more fully described in this Declaration." It further defined "Common Expenses" as

"[t]he expenses of administration (including management and professional services), operation, maintenance, repair, replacement of, and snow removal from the Common Area; the cost of and expenses incurred for, the landscaping of each Townhome, as more fully provided in this Declaration; the cost of, and the expenses incurred for, the maintenance, repair and replacement of personal property acquired and used by the Association in connection with the maintenance of the Common Area and the Townhomes for which the Association is responsible hereunder; the cost of furnishing any services which the Association is required to furnish pursuant to the provisions of this Declaration; any expenses designated as Common Expenses by this Declaration; and any other expenses lawfully incurred by the Association for the common benefit of all of the Owners."

The declaration provided that, by accepting a deed, each owner of a unit agreed to pay "assessments and user charges." As for the purpose of the assessments, the declaration stated,

"The assessments levied by the Homeowners Association shall be used for the purpose of promoting the health, safety and welfare of the Members of the Homeowners Association and in particular, without limiting the foregoing: (1) for the improvement and maintenance of the services and facilities devoted to such purpose and related to the use and enjoyment of the Community Area, including reasonable reserves, and further including by not limited to, the maintenance, repair, and replacement of the streets, walks, paths, access facilities, detention pond, perimeter fencing, and of all other improvements on the Community Area, and added planting, replanting, care, and maintenance of trees, shrubs, flowers, grass, and all other landscaping of the Community Area; (2) for the payment of taxes and insurance on and the making of repairs, replacements and additions to the Community Area, defraying the cost of labor, equipment, material and office and utility space required for the management and maintenance of the Community Area[;] and (3) in general for carrying out the duties of the Board as set forth in this Declaration and the By-Laws of the Homeowners Association."

¶ 6        The assessment procedures stated that each year the board would meet to create the budget for the following year and determine the amount each owner would have to pay.

"On or before January 1st of the ensuing year, and the 1st day of each and every month of said year, each Member shall be personally obligated to pay, in the way prescribed herein, one-twelfth (1/12) of such Member's annual assessment, together with all user charges incurred by such Member during the preceding month."

For "user charges," the declaration stated,

"The Board may establish, and each Member shall pay, user charges to defray the expense of providing services, facilities or benefits which may not be used equally or proportionately by all of the Members or which, in the judgment of the Board should not be charged to every Member. Such expenses may include, without limitation, charges predicated on the negligence of any Member or the abuse of any part of the Community Area, and fees for such other services and facilities provided to Members which should not reasonably be allocated among all of the Members in the same manner as Member assessments. Such user charges may be billed separately to each Member benefited thereby, or may be added to such Member's assessments as otherwise determined, and collected as provided herein. Nothing herein shall require

the establishment of user charges as hereinabove authorized, and the Board may elect to treat all or any portion thereof as expenses to be defrayed by Member assessments."

The declaration further provided that any assessment not paid within 30 days after the due date is delinquent and

"[t]he Homeowners Association may bring an action against the Owner or Member personally obligated to pay assessments and recover the same, including interest, costs and reasonable attorney's fees for any such action, which shall be added to the amount of such assessment and included in any judgment rendered in such action; and the Association may enforce and foreclose any lien it has or which may exist for its benefit."

¶ 7    The case proceeded to a bench trial on July 9, 2018. The plaintiff was represented by counsel, but the defendant appeared as a self-represented litigant. Kathleen Powers testified that she was employed by Advocate Property Management, which managed the business affairs for the plaintiff. Powers stated that, according to the records, the defendant owned his unit and had "unpaid common expenses," so a 30-day notice was sent on December 13, 2017. The defendant did not pay in full within 30 days of the notice. Powers stated that the ledger from AUM was for the water bill and that AUM was the vendor that provided the billing. When asked why the plaintiff charged separately for the assessments and the water bill, Powers said,

"when this community was established, it was originally an apartment complex that was converted to condominium townhomes, and they were not individually metered.

So in order to make it equitable for the Association and the residents, they have a third-party vendor that does the billing."

Powers stated that, at that time, the defendant owed $735.85 for the water bill and owed a total of $1787.87, which included the water bill, a charge for Powers to appear in court, the cost of the notice sent out, collection charges, and legal fees. Counsel for the plaintiff showed Powers updated ledgers and documents that are not included in the record on appeal. After Powers's testimony, the plaintiff rested.

¶ 8    The defendant testified that he received a late notice dated November 15 that informed him that he owed $337 and had 15 days to pay in order to avoid further collection. When he received a demand letter, he contacted an attorney, who sent correspondence to the plaintiff. The defendant read the letter in court, which stated that it was disputing the validity of the debts the plaintiff was claiming. The plaintiff's attorney did not contact the defendant's attorney for over a month. The plaintiff continued to send notices to the defendant. The defendant made multiple payments during this time. It is unclear from the record how much the defendant paid and owed, as those ledgers are not included in the record on appeal. The defendant stated that he did not believe the water bill was a common expense or assessment and that he felt that the amount owed and the resulting legal action was "unfair, given that I've been in contact with Miss Powers and the Association trying to amicably resolve this matter." The defendant stated that he did not dispute that he owed a water bill. However, the defendant did dispute the amount owed, stating,

"I contacted Miss Powers to see why my water bill was so high. I would say maybe in November of 2016 it went from being about $75 a month to being anywhere from [$]100 to $150 a month. She advised me to contact the billing company, which I did. They told me that there was not much they could do.

I contacted them again, and then they sent a letter to the Association, which the Association forwarded to me to have a plumber come out. And I've been unemployed since September of 2017, so I haven't had a chance to have a plumber come out."

The defendant stated that he did not think the water bill was part of the common expenses or assessments, stating, "the way I viewed it was like it was an electric bill *** that it's billed by a third-party vendor." The defendant stated that he looked in the bylaws and declarations and did not find anything that addressed the water bill. The defendant showed the court copies of the correspondence sent to the plaintiff and received from the plaintiff, but that correspondence is not included in the record on appeal.

¶ 9        The plaintiff called Powers as a rebuttal witness. She stated that people have disputed the separate ledgers for the water bill, but usually it is someone new to the property who does not understand how it works. She stated that other residents have had malfunctioning meters. The meters were read remotely, not in the unit, and when the meter was not reading properly, the utility company was estimating the bill. AUM would contact Powers when this happened. The court asked Powers what notice the residents had that the water bill was included as an assessment. Powers stated that she believed it was disclosed in the documents they received when they purchased the unit. Powers stated that she did not have that documentation. The court said, "Let me put [it] to you this way. The burden is on the plaintiff. *** Where do you get to say, right here, he's on notice?" Powers pointed to the "User Charges" portion of the declaration.

¶ 10        The defendant asked Powers where it says "water bill" in the declaration and bylaws, noting that the language seems ambiguous and appeared to point to "landscaping or something that's provided for the common good for the entire association." Powers stated that she did not know why it was set up like that but that she thought that it would cost the owners more to have individual meters installed to bypass it. She stated,

"Currently, your other things, such as your phone, your utilities, like, your electric and your gas, you have your own individual items inside your unit that you create your own account and you take care of that. This, because of the way the buildings were built, is the reason for that type of language."

The defendant asked, "wouldn't it be reasonable to infer that *** maybe the meters that are currently there aren't individual meters, and maybe that there are meters for two units or three units or six units or however many units are currently attached?" Powers stated that she could not answer that, but she believed the meters had been updated so that the water use in the individual units could be read. Powers stated,

"When a resident calls up and tells me that they think their water bill is high, before we engage the services of the provider, the resident has to establish that there are no plumbing issues within the unit, too, that would cause the water bill to be higher than normal. And then we guide people on the most cost-effective ways to do that when we can."

¶ 11        The court ruled in favor of the defendant, stating,

"Court's listened to the evidence, the arguments, reviewed the evidence, considered the testimony, and credibility thereon.

This is a homeowner's assessment issue pursuant to the Eviction Code.

Notice is sent out December 13th. There was a payment on December 9th, which made the assessment amount zero.

The attorney's fees, reasonable attorney's fees, had been paid up until that point.

So the question is, is there a water bill that is now an assessment?

In reviewing the declarations, 403(e) states, User Charges. The Board may establish and each member shall pay user charges to fray the expenses, et cetera.

402, Purpose of Assessments. There's three issues for a purpose—levying of assessments:

Improvement and maintenance of the services and facilities, payment of taxes and insurance, and general, for carrying out the duties of the Board as set forth in this declaration and bylaws of the homeowners' association.

When the user charges state, The Board may establish, it is incumbent upon the Board to establish the assessment.

It may be valid for this board to state in bylaws or other properly-noticed information that a water bill is now considered assessment. It fails to do so.

The ambiguity and vagueness is construed against the drafter. And, therefore, the water bill is not an assessment, according to this. And the eviction code does not apply.

It doesn't mean you don't owe the water bill.

\*\*\*

\*\*\* What they can't do is evict you because of a water bill. That's not what they can do. They can go after you and make sure that you pay the water bill if it is against them, but they're not going to be able to evict you on that.

This is an easy cure by having a properly-noticed meeting with a change to the bylaw and adding that as a specific assessment.

It's not there. The assessments having been paid in full, finding in favor of the defendant."

The plaintiff asked for clarification, noting that it also alleged breach of contract. The court said,

"Still the same. On the breach of contract claim, the common allegations \*\*\* don't allege any difference in the water bill.

In your Count II, the breach of contract claim, it still states by the associations and declarations that same argument."

The court stated that the it was not specific "and the ambiguity lies in favor of the defendant."

¶ 12    The plaintiff filed a motion to reconsider, and a hearing was held without the defendant present. The court denied the motion, stating,

"In this situation there was a factual dispute. That factual dispute laid in favor of the owner, not to the association, so while I did make a finding that that by itself was not a common expense based on the fact that the bill was not in dispute and that there was a separate—not a separate meter for the individual owner, that the amounts of the water were in dispute because it was not individual to the owner, the factual dispute is what may have led the Court to find in favor of the owner and against the association. So while I found that it was not a common expense, that is true. More important here the

- 6 -

factual dispute laid in favor of the defendant and it was a finding against the association."

The court continued,

"The water bill was not considered an assessment or additional rent or additional assessment because the association separated it out, and because there was a dispute as to the amount of water that was used and the increase in the bill in one area where the *** owner was disputing the amount of the water. I found that it was not a common expense which would allow the association to evict and the eviction law was not applicable. I found that the dispute over the factual amounts of the water laid in favor of the defendant because of his defenses and the lack of individual meters."

¶ 13                                    II. ANALYSIS

¶ 14       On appeal, the plaintiff argues the court erred in (1) failing to enter an eviction order in favor of the plaintiff and (2) finding the defendant not liable under a breach of contract theory. The plaintiff solely challenges the court's ruling with regard to the water bill and does not argue that any other expense other than the water bill was owed to it.

¶ 15                                    A. Eviction

¶ 16       The plaintiff argues that the court erred in failing to enter an order evicting the defendant from the unit. Specifically, the plaintiff argues that it has broad authority to determine its expenses and, because the water charges could either be considered common expenses or other lawful expenses, the court should have ruled in its favor.

¶ 17       "The construction of a statute is a question of law that is reviewed *de novo*." *State Place Condominium Ass'n v. Magpayo*, 2016 IL App (1st) 140426, ¶ 20. The function of the courts in construing statutes is to ascertain and give effect to the intent of the legislature, and we presume that the General Assembly, in its enactment of the legislation, did not intend absurdity, inconvenience, or injustice. *Glens of Hanover Condominium Ass'n v. Chiaramonte*, 159 Ill. App. 3d 287, 290 (1987). "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. [Citation.] Further, when a statute defines the very terms it uses, those terms must be construed according to the definitions contained in the statute." *Magpayo*, 2016 IL App (1st) 140426, ¶ 20.

"A court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative. [Citation.] Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible. [Citation.] Even when an apparent conflict between statutes exists, they must be construed in harmony with one another if reasonably possible." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002).

¶ 18       While we consider statutory construction *de novo*, since the court reached its decision after a bench trial, we review its factual findings under a manifest weight of the evidence standard. *Magpayo*, 2016 IL App (1st) 140426, ¶ 21; *Crest Hill Land Development, LLC v. Conrad*, 2019 IL App (3d) 180213, ¶ 34.

"A ruling is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if

the ruling itself is unreasonable, arbitrary, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Under the manifest weight standard, deference is given to the trial court as finder of fact because the trial court is in a better position than the reviewing court to observe the conduct and demeanor of the parties and witnesses. *Id.* A reviewing court will not substitute its judgment for that of the trial court as to the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence." *Conrad*, 2019 IL App (3d) 180213, ¶ 34. The plaintiff, as the appellant, has the burden of establishing any error. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 132 (1976).

¶ 19 At the outset, we note that, at various times in its filings in the circuit court, the plaintiff referred to itself as "a common interest community association" or a "condominium association" and stated that it has the authority to administer the property pursuant to the Condominium Act "and/or" the Common Interest Community Act. However, on appeal, the plaintiff solely defines itself as "a common interest community association" and argues that it derives its authority from the Common Interest Community Act. The plaintiff's own declaration states that it was adopted pursuant to section 18.5 of the Condominium Act, which makes it a "master association" under the Condominium Act. 765 ILCS 605/18.5 (West 2018). The plaintiff's governing documents make no mention of the Common Interest Community Act. Because the declaration was adopted pursuant to the Condominium Act, it does not fall under the purview of the Common Interest Community Act. Further, section 1-10 of the Common Interest Community Act states that it applies to all common interest community associations in the state. 765 ILCS 160/1-10 (West 2018). Section 1-5 defines "common interest community" as "real estate other than a condominium" and specifically states, "A 'common interest community' does not include a master association." *Id.* § 1-5. Therefore, the Common Interest Community Act does not apply, and we will, instead, apply the Condominium Act.

¶ 20 Section 9 of the Condominium Act provides that each unit owner must "pay his proportionate share of the common expenses." 765 ILCS 605/9(a) (West 2018). Common expenses are defined as "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed." *Id.* § 2(m). It also provides that each year the board of managers

"shall prepare and distribute to all unit owners a detailed proposed annual budget, setting forth with particularity all anticipated common expenses by category as well as all anticipated assessments and other income. The initial budget and common expense assessment based thereon shall be adopted prior to the conveyance of any unit. The budget shall also set forth each unit owner's proposed common expense assessment." *Id.* § 9(c)(1).

The board must give each unit a copy of such proposed budget before adopting it and must "annually supply to all unit owners *** an itemized accounting of the common expenses for the preceding year actually incurred or paid, *** with a tabulation of the amounts collected pursuant to the budget or assessment." *Id.* § 18.5(c)(2). Moreover, the board must provide notice to the unit owners concerning the adoption of the budget, regular assessments, or any special assessments. *Id.* §§ 18(a)(8)(i), 18.5(c)(3). Should the owner fail to pay his share of the common expenses, the association may place a lien on the unit. *Id.* § 9(g)(1).

- 8 -

¶ 21        The Condominium Act also allows an association to file a forcible entry and detainer action against a defaulting owner. *Id.* § 9.2(a). Section 9-111(a) of the Forcible Entry and Detainer Act provides, in pertinent part,

> "when the action is based upon the failure of an owner of a unit *** to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and the court shall enter an eviction order in favor of the plaintiff and judgment for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs." 735 ILCS 5/9-111(a) (West 2018).

Therefore, the plaintiff must prove (1) common expenses or "other expenses lawfully agreed upon" were owed, (2) the owner failed to pay, and (3) the amount owed. See *Board of Managers of Dunbar Lakes Condominium Ass'n II v. Beringer*, 94 Ill. App. 3d 442, 445-46 (1981); *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 25. The plaintiff must prove the allegations by a preponderance of the evidence. 735 ILCS 5/9-109.5 (West 2018).

¶ 22        Here, Powers testified for the plaintiff that the owners received two separate ledgers for assessments, one from the plaintiff and a separate one from AUM. AUM provided the billing for each unit's water bill. The units were not individually metered, and while she believed the meters had been updated so that the individual units could be read, she did not know. When asked how the defendant was on notice that the water bill was included as an assessment, Powers stated that she believed it was in the documents provided to the defendant when he bought the unit but that she did not have that information with her. She then pointed to a portion of the declaration that provided for the establishment of user charges. She agreed that the declaration did not specifically provide for the water bill. While the defendant did not dispute that he owed a water bill, he did not admit that he owed the water bill to *the plaintiff*. Moreover, he specifically disputed that it was considered as an expense owed to the plaintiff and disputed the amount owed, noting that his bill increased by an inordinate amount. He had contacted the plaintiff to figure out why, who had told him to contact AUM.

¶ 23        The court held that, while the plaintiff had the ability to levy assessments and user charges, it had to actually establish such assessments by providing notice to the unit owners through the declaration and bylaws or some other notice, which the plaintiff had failed to do. Moreover, the court clarified in the hearing on the motion to reconsider that it found that the amount of water was in dispute, and it found that the plaintiff did not prove by a preponderance of the evidence the amount owed.

¶ 24        This holding was not against the manifest weight of the evidence. While we agree with the plaintiff that the Condominium Act "gives the board of managers broad latitude in determining common expenses" (*Chiaramonte*, 159 Ill. App. 3d at 291), the Condominium Act clearly requires that the board actually adopt any expenses or assessments and provide notice of such to the unit owners. The plaintiff did not provide any evidence that it established the water bill as an assessment in this way. Powers stated that she thought it was included in the documents presented to the defendant when he bought the property, however, she did not have any documentation to show that. Moreover, the ledger itself is from AUM, is not an actual bill, and does not provide any information that the charges are actually owed to the plaintiff, as opposed

to AUM or a separate utility provider. The record is devoid of any evidence regarding how the defendant owes the plaintiff for the water bill. The plaintiff has not proven that the water bill is a common expense or other expense "lawfully agreed upon" so as to bring it within the Forcible Entry and Detainer Act.

¶ 25 Even if the plaintiff proved that the water bill was a lawfully agreed upon expense, the only physical evidence that the plaintiff presented of the amount owed, at least on appeal, was a ledger from AUM dated December 6, 2017. The report of proceedings mentions multiple exhibits entered by both parties, including updated ledgers and letters between the parties. However, none of these exhibits are included in the record on appeal. As the appellant, the plaintiff has

> "the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error and, in the absence of such a record on appeal, a reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. [Citation.] Any doubts arising from the incompleteness of the record are resolved against the appellant." *Wackrow v. Niemi*, 231 Ill. 2d 418, 428 n.4 (2008).

The defendant stated that his water bill went up by 30-50%, and he challenged such increase. See *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 32 (recognizing that a unit owner has recourse and can challenge whether assessments are due). The plaintiff provided no information regarding how the water bill was calculated. Powers read the amount owed from the ledger into the record but did not have personal knowledge regarding the calculation or billing of the water bill, and no one from AUM testified. Powers stated that there were times when the meter malfunctioned and AUM estimated the bills, but she said that AUM would contact her when this happened.

¶ 26 We cannot say that "it is clearly apparent from the record that the trial court should have reached the opposite conclusion or *** the ruling itself is unreasonable, arbitrary, or not based upon the evidence presented." *Conrad*, 2019 IL App (3d) 180213, ¶ 34. Therefore, the court's ruling was not against the manifest weight of the evidence.

¶ 27 B. Breach of Contract

¶ 28 The plaintiff further contends that the court erred in failing to find the defendant liable under a breach of contract theory. We review *de novo* the interpretation of a contract. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). However, whether a breach of contract occurred is a question of fact, and the court's finding will not be disturbed on appeal unless it was against the manifest weight of the evidence. *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 24. "The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001).

¶ 29 Here, the court found the defendant not liable under a breach of contract theory for much of the same reasons that it found the plaintiff's forcible entry and detainer claim failed. The plaintiff pointed to the declaration as establishing a contractual relationship requiring the defendant to pay the water bill to the plaintiff. As stated above, the declaration does not itself establish that the defendant will be responsible for paying the water bill to the plaintiff but instead gives the board the ability to lawfully establish certain charges and assessments. *Supra*

- 10 -

¶ 25. The plaintiff provided no evidence that it established a charge for the water bill pursuant to this declaration. *Supra* ¶ 25.

¶ 30      We note that the court found the declaration ambiguous as to whether it included the water bill. "A contract will be considered ambiguous if it is capable of being understood in more sense than one." *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). Whether a contract is ambiguous is a question of law for the trial court. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). Where a court determines that a contract is ambiguous, its construction then becomes a question of fact. *Whitlock*, 144 Ill. 2d at 447.

¶ 31      We agree that the contract is ambiguous on this point. While the contract discusses its ability to levy user charges, common expenses, and assessments, it states that such are for the purpose of improving and maintaining the services and facilities, paying taxes and insurance, and "for carrying out the duties of the Board." The user charges state that the board may establish user charges

> "to defray the expense of providing services, facilities or benefits which may not be used equally or proportionately by all of the Members or which, in the judgment of the Board should not be charged to every Member. Such expenses may include, without limitation, charges predicated on the negligence of any Member or the abuse of any part of the Community Area, and fees for such other services and facilities provided to Members which should not reasonably be allocated among all of the Members in the same manner as Member assessments."

While the plaintiff can argue that the declaration includes the water bill, it can just as easily be read to exclude utilities, such as water, provided to individual units outside of the common area. Because it is capable of being understood in more than one sense, it is ambiguous. "Ambiguous contractual language is generally construed against the drafter of the language ***." *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 493 (1987).

¶ 32      The plaintiff does not provide any further evidence to establish that the water bill was a user charge, common expense, or assessment. Powers stated that the ledger from AUM was the amount the defendant owed on the water bill. However, as stated above (*supra* ¶ 25), the ledger itself does not state that the defendant owed the water bill to the plaintiff. While the defendant agreed that he owed a water bill, he did not admit that he owed it to the plaintiff. In the absence of such evidence, it was not against the manifest weight of the evidence for the court to find that the plaintiff did not prove that there was a valid, enforceable contract requiring the defendant to pay the plaintiff for the water bill.

¶ 33      Moreover, the court found that the plaintiff did not prove how much the defendant owed for the water bill. The defendant disputed the amount, and the plaintiff provided no information regarding how the bill was calculated. "As the party seeking to recover, the plaintiff bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994). As stated above, it was not against the manifest weight of the evidence for the court to find that the plaintiff failed to meet this burden. See *supra* ¶¶ 24-26.

¶ 34                              III. CONCLUSION

¶ 35          The judgment of the circuit court of Will County is affirmed.

¶ 36          Affirmed.