**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 220006-U

Order filed September 27, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| MORGAN'S ORCHARD LAKE HOMEOWNERS' ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| MICHAEL C. MORGAN, LESLIE K. MORGAN and UNKNOWN OCCUPANTS, | ) ) ) | Appeal No. 3-22-0006 Circuit No. 19-LM-2548 |
| Defendants | ) ) | |
| (Michael C. Morgan, | ) ) | The Honorable James F. McCluskey, |
| Defendant-Appellee). | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  In proceedings stemming from a complaint for eviction and the recovery of unpaid Homeowners Association (HOA) assessments, the circuit court did not err in entering a judgment in favor of defendant, a lot owner who failed to pay the HOA assessments at issue, where those assessments were not determined by the Voting Members of the HOA as required by the terms of the HOA's Declaration.

¶ 2        Plaintiff, Morgan's Orchard Lake Homeowners' Association, filed an eviction complaint against defendants, Michael C. Morgan and Leslie K. Morgan, owners of a lot within the development that was part of the plaintiff Homeowners' Association (HOA) at issue. In the complaint, plaintiff requested possession of defendants' premises and money damages in the amount of $6738.14 for unpaid HOA assessments, plus accruing common expenses, late fees, and attorney fees and costs. Following a bench trial, the circuit court entered judgment in favor of plaintiff. After a hearing on defendant, Michael's, subsequent posttrial motion to vacate/modify the judgment, the circuit court vacated the judgment and entered a judgment in favor of Michael. On appeal, plaintiff argues the trial court erred in entering a judgment in favor of Michael because the assessments were validly imposed by way of the approval by the HOA's five-member Board of an annual budget and the Board's subsequent imposition of assessments based on that budget. We affirm the circuit court's judgment entered in favor of Michael.

¶ 3                                I. BACKGROUND

¶ 4        Plaintiff, Morgan's Orchard Lake Homeowners' Association, is a not-for-profit homeowners' association (HOA). The HOA's authority is set forth in the "Declaration of Covenants, Conditions and Easements for Morgan's Orchard Lake Planned Unit Development" (Declaration), which was executed on March 1, 1994, and subsequently recorded with the Du Page County Recorder's office on March 8, 1994. The Declaration was made by the Declarant—collectively, Suburban Trust & Savings Bank (as a trustee under a 1987 trust), Edward F. Morgan, Jr., (E.F. Morgan), Sally E.L. Morgan (S. Morgan), and First Chicago Trust Company of Illinois (as trustee under a 1993 trust). At the time the Declaration was executed, the Declarant owned the Morgan's Orchard Lake Planned Unit Development (the Development), which was located in Wheaton, Illinois, rezoned by the City of Wheaton, and subdivided into nine

2

residential lots and three outlots. The Development was subject to and governed by the Declaration.

¶ 5                                            A. Declaration

¶ 6        Under the terms of the Declaration, the management and maintenance of the Development were vested in the HOA. The Declaration indicated that the association, "acting through its membership or its Board of Managers, as the case may be," had the responsibility of (in pertinent part) establishing and approving the annual budget, establishing assessments, collecting assessments, and performing any other acts reasonable or necessary to enforce and administer the terms of the Declaration.

¶ 7        In regard to voting rights, one "Voting Member" with respect to each lot "shall be entitled to vote at HOA meetings." Where there is more than one owner of a lot, the Voting Member for that lot was to be determined by the owners of the lot as they saw fit. The Declaration indicated that unless waived in writing by all Voting Members, notice of each meeting of the Voting Members shall be provided to each unit owner/designated voting member at least 10 days prior thereto.

¶ 8        The Declaration also indicated: "there shall be a meeting of the Voting Members annually in the months of April or May, at a time and date designated by written notice of the Board delivered to the Voting Members not less than ten (10) days prior thereto" (the annual meeting); special meetings of the Voting Members may be called at any time for the purpose of considering matters that, by the terms of the Declaration, require approval of all or some of the Voting Members (special meetings); and special meetings shall be called by written notice authorized by the Board or by four of the nine Voting Members.

¶ 9        Under the terms of the Declaration, at each annual meeting, "a Board of Managers shall be elected" consisting of five lot owners (Board). "The Board shall have the powers and duties necessary for the administration of the affairs of the Association and may do all acts and things as are not by th[e] Declaration or the Association's By-Laws directed to be exercised by the Lot Owners," which included "enforc[ing] the terms of th[e] Declaration" and "caus[ing] the annual budget to be prepared, and each Lot owner to be notified of the annual budget and any regular or special assessments against said Lot, and to collect the same, all in accordance with th[e] Declaration." The Declaration specified that at least 30 days prior to the Board's adoption of an annual budget, "[a] copy of the proposed annual budget shall be provided to the Unit Owners." Additionally, financial statements for the prior year "shall be given to each Unit Owner at each year's annual meeting."

¶ 10       Under the Declaration, each lot owner "by acceptance of the deed to his Lot, shall be deemed to covenant and agree to pay to the HOA, annual or monthly assessments of charges, and special assessments." The amount of the annual/monthly assessments "shall be determined by the Voting Members at any annual meeting or any special meeting called for the purpose." The amount of those assessments "shall in no case be less than an amount determined (taking into consideration existing cash reserves and the need to maintain future reasonable reserves) by the Declarant or the Board, as the case may be, necessary to defray all costs and expenses of the Association in meeting its obligations and fulfilling its duties under this Declaration and the By-Laws for the following year." If an assessment is not paid when due, the assessment "shall be delinquent" and (together with interest and cost of collection) shall be "a continuing lien on the Lot in favor of the [HOA]." The obligation to pay assessments "shall also be a personal obligation of the Lot Owner until paid in addition to a continuing lien on the Lot."

4

¶ 11          B. Common Interest Community Association Act (CICAA)

¶ 12          On March 21, 2017, the HOA, via a majority vote of the Board, entered a resolution, under which it affirmatively elected to be covered by the Common Interest Community Association Act (CICAA) (765 ILCS 160/1-1 *et seq*. (West 2016)). Under the CICAA, a "common interest community association" is an association of all members of a common interest community, "acting pursuant to bylaws or an operating agreement through its duly elected board of managers or board of directors." *Id*. § 1-5. The CICAA provides, "[t]he administration of every property shall be governed by the declaration and bylaws or operating agreement." *Id*. § 1-20(a).

¶ 13          The CICAA further indicates that the duties and obligations of the Board include meeting four times annually; having bylaws or an operating instrument that provides for maintenance, repair, and replacement of common areas and payment therefor: and "having the power, after notice and opportunity to be heard, to levy and collect reasonable fines *** for violations of the declaration, bylaws, operating agreement, and rules and regulation of the HOA." *Id*. § 1-30.

¶ 14          Section 1-45 of the CICAA specifically addresses "finances." *Id*. § 1-45. Pursuant to section 1-45 of the CICAA, 30-60 days "prior to the adoption thereof by the board," each member of the association shall receive a copy of the proposed annual budget, to include an indication of "reserves, capital expenditures or repairs or payments of real estate taxes." *Id*. § 1-45(a). Additionally, the Board shall provide all members with a reasonably detailed summary of the receipts, common expenses, and reserves for the preceding budget year. *Id*. § 1-45(b). If an adopted budget or any separate assessment adopted by the Board would result in the sum of regular and separate assessments payable in the current fiscal year to exceed 115% of the sum of regular and separate assessments payable during the preceding fiscal year, "the common interest

5

community association, upon written petition by members with 20% of the votes of the association delivered to the board within 14 days of the board action, shall call a meeting of the members within 30 days of the date of delivery of the petition to consider the budget or separate assessment"—the budget/separate assessment "shall be deemed ratified" unless a majority of the total votes of the members are cast to reject the budget/separate assessment. *Id*. § 1-45(c).

¶ 15    If total common expenses exceed the total amount of the approved and adopted budget, "the common interest community association shall disclose this variance to all its members and specifically identify the subsequent assessments needed to offset this variance in future budgets." *Id*. 1-45(d). Separate assessments for expenditures relating to emergencies or mandated by law may be adopted by the board without being subject to member approval. *Id*. § 1-45(e). Assessments for additions and alterations to the common areas or to association-owned property not included in the adopted annual budget shall be separately assessed and are subject to approval of a simple majority of the total members at a meeting called for that purpose. *Id*. § 1-45(f).

¶ 16    <center>C. Litigation</center>

¶ 17    On October 7, 2019, plaintiff filed an "eviction complaint" against defendants, alleging it was entitled to possession of a certain premises located in Wheaton, Illinois. Plaintiff also alleged that defendants "unlawfully withhold possession" of the premises from plaintiff and were "indebted" to plaintiff in the sum of $6738.14 "for unpaid common expenses and other fees." Plaintiff requested a judgment against defendants for possession of the premises and requested $6738.14, plus accruing common expenses, late fees, attorney fees and costs. (Leslie was not living with Michael at the time and was served by posting. Leslie did not participate in the proceedings).

¶ 18        At the bench trial, Michael's attorney requested clarification as to whether "this [was] an action under the Forcible Entry and Detainer Act" pursuant to section 9-102(a)(8) of that Act (735 ILCS 5/9-112 (West 2016)) in regard to the unpaid assessments. The trial court indicated, "[i]t is." Michael's attorney argued plaintiff could not prove that the assessments at issue were validly adopted pursuant to the HOA's Declaration because the members of the HOA did not approve the assessments and, therefore, there were, in fact, no unpaid assessments. The attorney for plaintiff argued that under the CICAA, members of the HOA did not have to approve regular assessments.

¶ 19        The evidence indicated that regular HOA assessments were charged to lot owners on a quarterly basis. There had not been a meeting of the Voting Members to vote on and approve the assessments at issue. Although the lot owners/Voting Members of the HOA could attend the board meetings as observers, the only persons that voted at those meetings were the members of the Board. Prior to 2017, regular assessments were proposed by the Board and sent to the lot owners "to consider, make questions, and then vote on it" at a subsequent lot owner meeting. Following the Board's adoption of the CICCA on March 21, 2017, lot owners were no longer asked to vote to approve assessments. Instead, on February 22, 2018, lot owners were sent a notice indicating that a Board meeting was taking place on March 27, 2018, at which the Board would be adopting a proposed budget for 2018 (which had increased over 115% from the prior year due to the Board's approval of a contract for landscaping/lawn services for the common areas and lawn services for all lots). A board meeting took place on March 27, 2018, at which the 2018 budget was adopted by vote of the Board. (Michael, who was a member of the Board at that time, abstained from voting on the budget). Thereafter, increased assessments were charged on a quarterly basis, starting on April 1, 2018. In 2019, the Board similarly sent notice of a proposed

7

budget, which was, thereafter, adopted by the Board at a board meeting on April 22, 2019. Lot owners were, thereafter, assessed quarterly in relation to the 2019 budget. Defendants had paid the 2018 first quarterly assessment of April 1, 2018, but did not pay assessments thereafter.

¶ 20     Following the bench trial, the circuit court entered a judgment in favor of plaintiff and against defendants in the amount of $6583 (plus attorney fees and court costs), finding that under the CICAA, the Board had authority to "adopt an assessment/budget" and to require lot owners to pay for regular or special assessment.[1] (The trial court subsequently modified that judgment by vacating the monetary award against Leslie and dismissing the monetary count against Leslie without prejudice).

¶ 21     Michael filed a posttrial motion pursuant to section 2-1203(a) of the Code of Civil Procedure (735 ILCS 5/2-1203(a) (West 2020)) requesting that the circuit court modify its decision and/or vacate the monetary award. Michael argued the Declaration required Voting Members' approval of the assessment amounts and the CICAA expressly permitted an HOA's Declaration to require such approval. Michael acknowledged that the Board had the authority to adopt an annual budget but contended that the Board did not have the authority to approve the

---

[1] On the issue of possession, plaintiff HOA argued for a judgment in its favor "for the whole premises." The circuit court ruled that section 9-102(a)(8) of the Illinois Eviction Act (formerly the Forcible Entry and Detainer Act) was applicable, the real estate subject to possession in favor of plaintiff was limited to common areas, and any request for possession beyond the common areas was dismissed. See 735 ILCS 5/9-102(a)(8), (c)(1) (West 2016) (an eviction action may be maintained when any property subject to a declaration establishing a common interest community and requiring the unit owner to pay regular or special assessments for the maintenance/repair of common areas or any other expenses lawfully agreed upon and the unit owner fails or refuses to pay; "a '[c]ommon interest community' means real estate other than a condominium or cooperative with respect to which any person by virtue of his or her ownership of a partial interest or unit therein is obligated to pay for maintenance, improvement, insurance premiums, or real estate taxes or other real estate described in a declaration which is administered by an association); 735 ILCS 5/9-112 (West 2016) ("[i]f it shall appear that the plaintiff is entitled to the possession of only a part of the premises claimed, the judgment shall be entered for that part only and for costs, and for the residue defendant shall be dismissed"). As is discussed below, the circuit court subsequently vacated this judgment and entered judgment in favor of Michael. The issue of possession has not been raised on appeal.

assessment amount, noting that the Declaration expressly (and unambiguously) stated that after the first annual meeting the amount of annual or monthly assessments "shall be determined by the Voting Members." Michael also argued that the HOA's Declaration at issue did not conflict with the CICAA where the CICAA specifically provided that the administration of every property shall be governed by the Declaration and did not prohibit a Declaration from requiring voting members to approve regular assessments.

¶ 22     On December 6, 2021, in ruling upon Michael's posttrial motion, the circuit court concluded that the CICAA did not invalidate the requirement in the HOA's Declaration that assessments "be determined by the Voting Members." The circuit court vacated the monetary award entered against Michael. Thereafter, on December 7, 2021, the circuit court further clarified its ruling in a written order granting judgment in favor of Michael. The HOA appealed.

¶ 23                                    II. ANALYSIS

¶ 24     On appeal, plaintiff HOA argues that the circuit court erred in entering judgment in favor of Michael where defendants had failed to pay HOA assessments that were properly approved and imposed by the HOA Board. In response, Michael argues that this court should affirm the trial court's judgment because the assessments were not valid where the HOA's Declaration required the assessments be approved by the Voting Members of the HOA, which was not done in this case.

¶ 25     "As a general rule, a homeowners association has the power to enforce subdivision covenants as an underlying contract between the developer and the property owners." *Chiurato v. Dayton Estates Dam & Water Company*, 2017 IL App (3d) 160102, ¶ 39. "The rules of construction for contracts govern our interpretation of the covenants contained in the declaration." *Forest Glen Community Homeowners Ass'n v. Bishof*, 321 Ill. App. 3d 298, 303

9

(2001). "A contract is ambiguous if it is reasonably susceptible to more than one meaning, but contractual language is not rendered ambiguous simply because the parties disagree on its meaning." *Id.* The trial court's interpretation of a contract is a matter of law, subject to a *de novo* review. *Id.*; *Standlee v. Bostedt*, 2019 IL App (2d) 180325, ¶ 57.

¶ 26    The construction of a statute is a question of law that we also review *de novo. Sherwood Commons Townhome Owners Association, Inc. v. Dubois*, 2020 IL App (3d) 180561, ¶ 17. In construing a statute, the function of the court is to ascertain and give effect to the intent of the legislature, and we presume that in enacting the legislation the General Assembly did not intend absurdity, inconvenience, or injustice. *Id.* The most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *Id.*

¶ 27    In this case, contrary to the plaintiff's argument, the Board did not have the authority to unilaterally determine the amount of the assessments at issue. Under the Declaration, in establishing assessments, among other things, the HOA acts either through its membership or the Board "as the case may be." The plain language of the Declaration indicates that annual/monthly assessments (regular assessments) "shall be determined by the Voting Members at any annual meeting or any special meeting called for the purpose." See *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359 , 371 (2007) (if words in a contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning and be applied as written); *cf. Forest Glen Community Homeowners Ass'n v. Bishof*, 321 Ill. App. 3d at 302-03 (the declaration language indicating "regular assessments shall be determined by the affirmative vote of two-thirds (2/3) of the Board" (and the applicable bylaws language) was unambiguous and clearly vested the authority to establish the amount of the annual assessments in the Board).

10

¶ 28        The Declaration additionally indicates that "there shall be" an annual meeting of the Voting Members and that a special meeting of the Voting Members may be called at any time for consideration of matters that require approval of the Voting Members. Pursuant to the terms of the Declaration, it was the duty of the Board to designate and provide notice of the date and time of an annual meeting. There is no indication the Board did so. It was also the duty of the Board to enforce the terms of the Declaration, which required Voting Members to determine the regular assessment and allowed for them to do so at the annual meeting or at a special meeting called for that purpose. There is no indication that a date/time for an annual meeting was designated, that an annual meeting took place, or that a special meeting was called for the purpose of the Voting Members to determine assessments for 2018 or thereafter. Although the Declaration indicates that the assessment amount cannot be below an amount the Board deems necessary "to defray all costs and expenses of the Association for the following year," there is no indication that any such minimum was established by the Board or presented to the Voting Members for their consideration. Instead, the Board unilaterally determined the assessments at issue.

¶ 29        We do not agree with plaintiff's assertion that the requirement under the Declaration for Voting Members to determine the assessments either conflicted with, or was invalid under, the CICAA. The CICAA does not alter the Voting Members' authority under the Declaration to determine regular assessments. See 765 ILCS 160/1-20(a) (West 2016) ("[t]he administration of every property shall be governed by the declaration and bylaws or operating agreement"). While the CICAA gives an HOA board the authority to adopt separate assessments related to emergencies or mandated by law without member approval (765 ILCS 160/1-45(e) (West 2016)) and the authority to adopt separate assessments for additions/alterations to common areas subject to the approval of a simple majority of the total members at a meeting called for that purpose

11

(765 ILCS 160/1-45(f) (West 2016)), it does not similarly give any authority to an HOA board to adopt regular assessments related to common expenses. See 765 ILCS 160/1-5 (West 2016) ("common expenses" are "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the common interest community association").

¶ 30     Here, the HOA Board, and not the Voting Members, determined the annual assessments at issue. The Board's decision to increase the annual assessments for 2018 and unilaterally determine annual assessments was not authorized under the terms of the HOA's Declaration. Consequently, the trial court did not err in entering a judgment in favor of Michael.

¶ 31                              III. CONCLUSION

¶ 32     The judgment of the circuit court of Du Page County is affirmed.

¶ 33     Affirmed.