# Illinois Official Reports

## Appellate Court

---

**Board of Directors of Winnitt Park Condominium Ass'n v. Bourdage,**
**2021 IL App (1st) 192536**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF DIRECTORS OF WINNITT PARK CONDOMINIUM ASSOCIATION, an Illinois Not-for-Profit Corporation, Plaintiff-Appellant, v. SHERRI BOURDAGE, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>No. 1-19-2536 |
| Filed | May 6, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-M1-709281; the Hon. Joel Chupack, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sima L. Kirsch, of Sima L. Kirsch, P.C., of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Reyes and Martin concurred in the judgment and opinion. |

**OPINION**

¶ 1       The instant appeal arises from the attempts of the Board of Directors of the Winnitt Park Condominium Association (the board) to evict Sherri Bourdage based on unpaid fines and attorney fees resulting from violations of the association's declaration and bylaws. Bourdage challenged the eviction, claiming that the fines were improperly assessed because she had not been given proper notice of the hearing on the alleged violations and did not have the opportunity to defend herself, and the trial court agreed, finding that Bourdage had not received proper notice or an opportunity to be heard. The board appeals, and for the reasons that follow, we affirm the trial court.

¶ 2                                                        BACKGROUND

¶ 3       On June 20, 2018, the board filed a complaint for the eviction of Bourdage; the complaint was amended on March 6, 2019, and it is the amended complaint that is at issue on appeal. The amended complaint alleged that Bourdage was the owner of a condominium unit that was subject to the association's declaration and bylaws. In count I of the amended complaint, the board alleged that Bourdage failed to pay $5109.12 in assessments between July 31 and October 27, 2017, and that the board sent Bourdage a notice and demand letter in October 2017 informing Bourdage of this delinquency. Bourdage failed to pay, despite repeated requests, and the board alleged that, as of the date of the complaint, Bourdage owed a total of $10,033.65 in assessments from July 31, 2017, through June 19, 2018. The board sought an eviction order granting it possession of the unit, as well as an award of attorney fees and costs.

¶ 4       In support of this count, the board attached a document detailing the payments made by Bourdage.[1] For each month, there was an entry titled "[month] Assessment," which showed that Bourdage owed $313.32 and paid $314. There are also several months that contain entries for a "Late Fee" of $25, which was ultimately paid by Bourdage. However, each month also contains an entry that is titled "[month] Legal Fees and Costs," with amounts ranging from $55 to $2704.55. The entries show that these fees were not paid by Bourdage.

¶ 5       Additionally, in count II of the amended complaint, the board alleged that, on June 22, 2017, the board sent Bourdage notice of her alleged violations of the declaration and bylaws[2] and that the board found Bourdage liable for the violations after a hearing on August 24, 2017. On November 17, 2017, the board again sent Bourdage notice of her alleged violations of the declaration and bylaws, and the board found Bourdage liable for the violations after a hearing on January 31, 2018. The board alleged that its declarations provided for an involuntary sale where a unit owner engaged in multiple violations of the declaration and bylaws and sought an order providing that Bourdage's interest in the property be sold at a judicial sale.

¶ 6       On March 21, 2019, Bourdage filed a motion to strike count II of the amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West

---

[1]It is not entirely clear what dates are encompassed by this document; the beginning of the document lists "June 2018" and shows a $0 balance, then lists entries month by month. However, the document then again repeats "2018" on the next page, when January begins. Given the allegations of the complaint, it appears that the original "2018" notation should have been "2017," with the entries running from mid-2017 through mid-2018.

[2]The amended complaint did not set forth the nature of the alleged violations.

2018)), claiming that such a cause of action was not permitted in a forcible entry and detainer complaint. The trial court granted Bourdage's motion on May 2, 2019, dismissing count II without prejudice.

¶ 7    Bourdage also filed an answer and affirmative defenses on April 12, 2019. In relevant part,[3] Bourdage alleged that she was current on her assessment payments and that the complaint was based on Bourdage's failure to pay fines that she had been assessed for alleged violations of the declarations and bylaws, as well as for attorney fees arising from the alleged violations. Bourdage alleged that she had not been provided the opportunity to appear before the board to defend herself because she was unavailable to attend the scheduled hearing on the violations. Bourdage alleged that she informed the board that she was unavailable on the dates selected by the board and provided at least three other dates where she would be available. However, the board never provided Bourdage with a date where she could attend. Bourdage also alleged that the ledger attached to the complaint, purportedly showing the attorney fees that she allegedly owed, did not provide any detail as to what legal services were provided.

¶ 8    The parties proceeded to a bench trial, beginning on July 11, 2019; there is no transcript of the trial proceedings, but the board supplied a bystander's report certified by the trial court. The record on appeal also includes the exhibits admitted into evidence at the trial. According to the bystander's report, a total of five witnesses testified at trial: board members Terri Latino and Bradley Dodge, association attorney Sima Kirsch (who is also representing the association on appeal), and Bourdage and her son. Also according to the bystander's report, Bourdage's defense was based on her claim that she did not receive proper notice of the hearing where the board found that she had violated the association's declaration and bylaws. Accordingly, we relate the evidence concerning that issue in some detail, primarily based on the exhibits admitted into evidence.

¶ 9    The evidence at trial showed that on June 22, 2017, the board issued a "Notice of (Alleged) Violation and Cease and Desist," directed to Bourdage (the June 22 notice). The June 22 notice provided that Bourdage was the subject of several complaints alleging violations of the association's bylaws "[f]or harassing, defaming and using profanity and confrontational words against certain unit owners and service professionals as well as threatening violence." The notice provided that the complaints tendered to the board were "attached," but the trial exhibit contains no such attachments. The June 22 notice provided that Bourdage could request a hearing by signing, dating, and returning the notice no later than July 10, 2017. The notice further provided:

> "Once your request is received, we will advise you of the date, time and location of the hearing; reasonable accommodation will be made if requested within a reasonable time. If you fail to protest this notice or if you fail to appear at a hearing once it is mutually scheduled, the Board will proceed on the stated date with or without your presence. Any fines, charges, costs, expenses, and legal fees associated with this notice may then be assessed against you and added to your account."

At the bottom of the notice, underneath a line providing that "I request a hearing with the Board of Directors on the above matter," Bourdage signed the notice and included a handwritten note providing that "I can't wait!"

---

[3]Bourdage raised a total of three affirmative defenses, but two of them were stricken by the trial court on June 20, 2019.

¶ 10        On July 2, 2017, Bourdage sent an e-mail to the board, with the subject line "I look forward to a hearing." In the e-mail, Bourdage wrote, in relevant part: "Let me know the date of the hearing ***."

¶ 11        A series of e-mails, bearing the subject line of "HEARING NOTICE," was also admitted into evidence. The first, dated August 2, 2017, was from the board to Bourdage and provides, in all capital letters: "PLEASE SEE ATTACHED. PAPER COPIES OF EMAILS WILL BE HAND DELIVERED WITHIN 24 HOURS OF THIS NOTICE." During her testimony, Latino testified that she and Dodge left paper copies of the attachments under Bourdage's door to her unit. The e-mail indicated that there were three documents attached. The first document was titled, "Hearing Date and Procedure" and provided that "[w]e will hold a hearing on August 17th at 6:30 pm *or* August 22nd at 6:30 pm. It will be held in private session at an open meeting. Please let us know which of these dates you prefer." (Emphasis in original.) A line on the bottom of the document includes a space for the selected date, followed by a notation to "[r]espond by 8/8." The other two documents referenced in the e-mail were not included in the trial exhibit. In response to that e-mail, Bourdage sent an e-mail dated August 3, in which she stated that the jewelry business she owned and operated was open until 7 p.m. and stated that "I'm done with the harassment. Leave me alone." Finally, the third e-mail in the chain is from the board to Kirsch, the association attorney, forwarding Bourdage's e-mail and stating, "[a]s you mentioned, [Bourdage] is refusing the hearing."

¶ 12        On August 22, 2017, the board sent an e-mail to all of the unit owners with the subject line "Board meeting—Thursday August 24, 6:30pm laundry room." The e-mail provided:

> "A general board meeting will be held on the above date. The meeting will be called to order and immediately adjourned to a private session when the board will hear a violation matter. After the hearing and some time for consideration, the board will return to open session to summarize the event and enter the board's decision. Thank you."

In response, on the same day, Bourdage replied, in relevant part: "I have repeatedly told the board that I work until 7 and that I am on vacation."

¶ 13        On August 24, 2017, the board issued a "final order" (the August 24 order), which provided that the board had conducted an evidentiary hearing on the complaints against Bourdage. The August 24 order contained several "finding[s] of fact," in which the board adopted the entirety of the complaining witnesses' narratives; we note that three of the four narratives adopted by the board were authored by board members Latino and Dodge. The board found that Bourdage had violated the association's declaration and bylaws and ordered Bourdage to pay a $50 fine, as well as attorney fees from the date of the June 22 notice through the time of its "final resolution."

¶ 14        On October 27, 2017, Kirsch sent a letter to Bourdage, notifying her that she was in default of the association's declaration and bylaws due to her failure to pay $5109.12 in "common expenses and fines." The letter provided that forcible entry and detainer proceedings would commence 30 days after the date of the letter unless Bourdage paid the full amount she owed.

¶ 15        On November 1, 2017, Bourdage sent an e-mail to Kirsch, in which she claimed that she was never provided a date that worked for a hearing. She stated that she worked every day from 11 a.m. until 7 p.m. in her retail store, so she required a time outside of her work hours. She also was out of town at the time of the August 24 hearing with her son, a trip which had been planned for months, and claimed that the suggested dates were intentionally chosen to be

held during that time. Bourdage further claimed that she had been provided with only two dates and advised that neither of those dates worked for her; Bourdage was available on a different night, but the board members "did not want to talk" then.

¶ 16　　On November 2, 2017, Bourdage sent an e-mail to the board. In the e-mail, Bourdage again claimed that she never agreed to the proposed times for the hearing, as her store was open until 7 p.m. Bourdage also claimed that she was out of town on the dates proposed by the board, taking her son to visit colleges. Bourdage claimed that she discussed this problem in person with board members Latino and Dodge and offered a different time, but they declined. Bourdage requested a hearing "as soon as possible." In another e-mail sent the same day, Bourdage stated that "I should have been given a date that did not interfere with my vacation or work as I requested and was legally required for the hearing."

¶ 17　　At trial, Bourdage's son testified that he was visiting schools in Wisconsin with Bourdage for three days, including August 24, 2017. Bourdage also submitted evidence of e-mails to her son's father, confirming that she would be out of town on August 21, 2017, an automobile reservation for August 21 through 28, 2017, and credit card statements showing charges in Wisconsin for the relevant dates.

¶ 18　　On November 7, 2017, the board issued another "Notice of (Alleged) Violation and Cease and Desist" directed at Bourdage (the November 7 notice). The November 7 notice again provided that Bourdage was the subject of several complaints alleging violations of the association's bylaws "[f]or harassing, defaming and using profanity and confrontational words against the unit owner as well as threatening violence and sending emails with false statements." The notice provided that the complaints tendered to the board were "attached," but the exhibit contains no attachments. As with the prior June 22 notice, the November 7 notice provided that Bourdage could request a hearing by signing, dating, and returning the notice no later than November 20, 2017.

¶ 19　　On November 20, 2017, Kirsch sent a letter to Bourdage in response to her November 1 e-mail. The letter provided that the board believed that Bourdage had received proper notice of the hearing but that it was willing to vacate the August 24 order if Bourdage timely requested a hearing. The letter instructed that Bourdage would need to submit three dates on which she would be available for a 7:30 p.m. hearing, and that those dates must be submitted by November 27, 2017, or else the August 24 order would stand. The letter further provided that Bourdage had been served with the November 7 notice concerning additional violations and that, if she requested a hearing date on the August 24 order, both matters would be heard on that date. If she did not request a hearing, the board would schedule a hearing on the new violations for the date of the next board meeting.

¶ 20　　On December 2, 2017, the board sent an e-mail to Bourdage with the subject line "See Attached Board Meeting Notice—12/04/17."[4] There was no text contained in the body of the e-mail, but only an attachment with the name "12-04-17 BOARD MTG (LITIGATION VOTE)." No attachments are included with the trial exhibit. In response, on the same day, Bourdage sent an e-mail to the board saying: "David[5] has not told me when he is free as he is

_____

[4]It is not clear whether this e-mail was sent to all of the unit owners or only to Bourdage. The "to" field of the e-mail shows only the board's e-mail address, with Bourdage "bcc'd" on the message.

[5]"David" appears to be a building employee who Bourdage anticipated calling as a witness at the hearing.

the main witness. Please ask him when he can meet as he is holding up the hearing.otherwise Tuesday 4pm for hearing or wed or thurs." On December 5, 2017, Bourdage forwarded her e-mail to Kirsch and her attorney, stating that she had not received a response from the board, but that she needed to be able to plan to have someone cover her store. She also sent another e-mail to the board, stating that she had provided her availability and asking, "why are [you] not allowing there [to] be a hearing so I can have a voice?"

¶ 21 On December 5, 2017, Bourdage's attorney sent a letter to Kirsch in response to Kirsch's November 20 letter. In the letter, the attorney indicated that Bourdage believed that she was being singled out for punishment due to personality conflicts with members of the board and that Bourdage believed that the fines levied against her were excessive and unfair. On December 26, 2017, Kirsch sent a letter to Bourdage's attorney in response to the December 5 letter, indicating that the board believed that Bourdage had received proper notice before the imposition of any fines and instructing her to file a formal complaint with the board if she believed there were any rule violations.

¶ 22 On January 29, 2018, the board sent an e-mail with the subject line "Amended Notice," which provided: "Please see attached agenda for Board Meeting 1/31/18. This will be an open Board meeting with a 'closed' portion." The agenda attached to the e-mail showed one matter of "New Business": "Closed: Hearing (we will reconvene to open session after the hearing)." In response, Bourdage sent an e-mail on January 30, asking: "Have you advised my attorney on this?"

¶ 23 On January 31, 2018, the board issued a "final order" (the January 31 order), which provided that the board had conducted an evidentiary hearing on the complaints against Bourdage detailed in the November 7 notice. Like the August 24 order, the January 31 order contained several "finding[s] of fact," in which the board "adopt[ed] the entirety of the following narratives"; the listed "narratives" included copies of the violation notice and Bourdage's communications with Kirsch and the board, as well as seven witness statements, four of which were authored by board members Dodge and Latino. The board found that Bourdage had violated the association's declaration and bylaws on seven occasions and ordered Bourdage to pay a $700 fine, as well as prohibiting Bourdage from using any of the limited common elements for three months, other than for direct ingress and egress to her unit.

¶ 24 At the close of the trial in the circuit court, the board made a motion to amend the complaint to conform with the proofs at trial, which the trial court granted. However, no amended complaint appears in the record on appeal.

¶ 25 After the bench trial, on September 9, 2019, the trial court issued a memorandum opinion and order on the eviction matter. The court found that there was no dispute that the demand for the outstanding fees relating to the August 24 order was properly served and that Bourdage did not tender the amount stated in the demand within 30 days of its service. However, the court found that the board did not issue a 30-day demand letter for the additional $700 fine and related legal fees that were the result of the January 31 order, so the nonpayment of those amounts could not serve as the basis for the eviction action.

¶ 26 The court found that the primary issue was whether the August 22 notice of the August 24 violation hearing was legally sufficient to provide Bourdage with proper notice and an opportunity to be heard on the alleged violations against her. The court found that, "[i]f it was not, then the $50 fine and the accompanying late fees and attorneys' fees were improperly

assessed. This, in turn, would invalidate the Demand and result in the denial of the Association's eviction action."

¶ 27 The trial court concluded that the August 22 notice was not sufficient. The trial court first found that the notice was not directed to Bourdage but was instead e-mailed to all of the unit owners. Next, the court found that the notice did not invite Bourdage to present her case at the meeting. Third, the court found that the notice was for a general board meeting, not for a violation hearing. Fourth, the court found that the e-mail did not provide any details as to the nature of the alleged violation or who was alleged to have committed the violation, merely stating that the meeting would be called to order and then immediately adjourned into private session to " 'hear a violation matter.' " The court found that "[t]his is at best confusing, and at worst misleading." Finally, the court found that there were no attachments to the e-mail—no agenda, no notice of violation, and no supporting documents.

¶ 28 The court also found that Bourdage was deprived of the opportunity to be heard at the August 24 meeting, as she provided uncontroverted evidence that she was out of town on that date and that she had advised the board in advance that she would be out of town. The court noted that the board's violation policy provided that extensions would not be unreasonably denied and that the board failed to follow its own policy. The court found that "[t]he 'notice' sent to Bourdage was sent a mere 48 hours in advance on a date that the Board knew that she could not appear. The fact that the Board may have given Bourdage the option of appealing the [August 24 order] does not cure the deficiencies of notice and deprivation of being heard at the [violation] hearing on August 24th."

¶ 29 Furthermore, the court found that, even if proper notice was given, the hearing did not comply with the association's own procedures. The court noted that the procedures necessitated the testimony of witnesses, but there was no evidence that any complaining witness testified at the hearing. Instead, the August 24 order merely " 'adopt[ed]' " the narratives contained in the witnesses' written statements. The court found that these narratives were "replete with hearsay statements, many by unknown declarants" and that it was apparent that many of the statements as to alleged occurrences were not made based on the personal knowledge of either Dodge or Latino. The court also noted that the imposition of a fine was required to be a two-step process, with the hearing occurring first, then the findings submitted to the board for imposition of a fine. However, this did not occur in Bourdage's case, with the hearing and the imposition of a fine combined into a single proceeding. The court further noted that the entirety of the proceeding was done in the closed portion of the meeting, which was inappropriate under the law.

¶ 30 The court concluded: "Bourdage was not given proper notice of the violation hearing to be heard during closed session of the August 24th Board Meeting and she was deprived of an opportunity to be heard. The $50 fine and the legal fees charged to her account relating to that fine are nullities. The Demand was predicated on wrongfully assessed amounts, thereby defeating the Association's eviction action. Count I of the Amended Complaint is denied."

¶ 31 On October 7, 2019, the board filed a motion to reconsider, which was denied on December 12, 2019; the court's order stated that it was denied "[f]or the reasons stated in the record," but no report of proceedings or bystander's report of this hearing is contained in the record on appeal. The board filed a timely notice of appeal, and this appeal follows. Bourdage did not file a brief, and we ordered the appeal taken on the board's brief and record alone.

¶ 33    On appeal, the board claims that the trial court erred in (1) finding that Bourdage had not received proper notice and an opportunity to be heard as to the violations contained in the August 24 order and (2) finding that the board could not proceed on an eviction based on the January 31 order. Under both the Condominium Property Act (765 ILCS 605/9.2(a) (West 2018)) and the Forcible Entry and Detainer Act (735 ILCS 5/9-102(a)(7) (West 2018)), an association may maintain an eviction action against a unit owner who fails to pay any lawfully owed expenses. The plaintiff in an eviction action bears the burden of proof in establishing its right to possession and must prove its allegations by a preponderance of the evidence. *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 609 (2007); 735 ILCS 5/9-109.5 (West 2018). In a bench trial, as occurred in the case at bar, the trial court has the opportunity to weigh the evidence and make findings of fact, and a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner*, 202 Ill. 2d at 252.

¶ 34    "A reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the fact finder." *Bazydlo v. Volant*, 164 Ill. 2d 207, 214 (1995). A reviewing court has only a cold record in which to govern its decision-making process. See *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 107. Accordingly, " '[t]he court on review must not substitute its judgment for that of the trier of fact.' " *Eychaner*, 202 Ill. 2d at 252 (quoting *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991)).

¶ 35                                I. August 24 Order

¶ 36    We first consider the trial court's finding that Bourdage did not receive proper notice and an opportunity be heard as to the violations contained in the August 24 order. Under section 9-102(a)(7) of the Forcible Entry and Detainer Act, an action for eviction may be maintained:

> "When any property is subject to the provisions of the Condominium Property Act, the owner of a unit fails or refuses to pay when due his or her proportionate share of the common expenses of such property, or of any other expenses lawfully agreed upon or any unpaid fine, the Board of Managers or its agents have served the demand set forth in Section 9-104.1 of this Article in the manner provided for in that Section and the unit owner has failed to pay the amount claimed within the time prescribed in the demand ***." 735 ILCS 5/9-102(a)(7) (West 2018).

Thus, in order to prevail in an eviction action, "the plaintiff must prove (1) common expenses or 'other expenses lawfully agreed upon' were owed, (2) the owner failed to pay, and (3) the amount owed." *Sherwood Commons Townhome Owners Ass'n v. DuBois*, 2020 IL App (3d) 180561, ¶ 21. In the case at bar, the board claims that it established that (1) Bourdage owned the unit, (2) the board made a timely demand for payment, (3) the demand was for lawfully agreed-upon expenses and fines, and (4) Bourdage did not satisfy the demand. Accordingly, the board claims that the trial court should have entered an eviction order.

¶ 37    However, the defendant in an eviction action has a right to assert any germane defenses in response to the plaintiff's claim of possession. *Circle Management*, 378 Ill. App. 3d at 609. Where the claim to possession is based on nonpayment of assessments, "[i]t necessarily

follows that whether [the unit owner], in fact, owes any assessments is germane to the proceeding." *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 18. Indeed, under section 9-111 of the Forcible Entry and Detainer Act, a plaintiff is entitled to possession of the premises "when the action is based upon the failure of an owner of a unit *** to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, *and if the court finds that the expenses or fines are due to the plaintiff*." (Emphasis added.) 735 ILCS 5/9-111(a) (West 2018). Thus, the question of whether the fines assessed against Bourdage were properly imposed was an issue that was properly raised by Bourdage as a defense to the eviction action.

¶ 38 Bourdage's defense was based on her claim that she was not afforded notice and an opportunity to be heard with respect to the violations that were addressed in the August 24 order. Under the Condominium Property Act, the board has the power "[t]o impose charges for late payment of a unit owner's proportionate share of the common expenses, or any other expenses lawfully agreed upon, and after notice and an opportunity to be heard, to levy reasonable fines for violation of the declaration, by-laws, and rules and regulations of the association." 765 ILCS 605/18.4(*l*) (West 2018). Bourdage claimed, and the trial court found, that Bourdage was not afforded notice and an opportunity to be heard before the board issued its August 24 order. We agree.

¶ 39 The board issued the June 22 notice to Bourdage, informing her of the fact that there were allegations against her that would be set for hearing. While there were no attachments to the notice as there should have been, there appears to be no claim by Bourdage that she was unaware of the nature of the complaints against her. The June 22 notice provided that Bourdage could request a hearing by signing, dating, and returning the notice no later than July 10, 2017, and further provided:

> "Once your request is received, we will advise you of the date, time and location of the hearing; reasonable accommodation will be made if requested within a reasonable time. If you fail to protest this notice or if you fail to appear at a hearing once it is mutually scheduled, the Board will proceed on the stated date with or without your presence. Any fines, charges, costs, expenses, and legal fees associated with this notice may then be assessed against you and added to your account."

At the bottom of the notice, underneath a line providing that "I request a hearing with the Board of Directors on the above matter," Bourdage signed the notice and included a handwritten note providing that "I can't wait!" Bourdage also sent an e-mail to the board on July 2, 2017, with the subject line "I look forward to a hearing" and stating, in relevant part: "Let me know the date of the hearing ***." Thus, there can be no question that Bourdage requested a hearing on the complaints that were the subject of the June 22 notice.

¶ 40 The board sent Bourdage a notice of the hearing on August 2, 2017, providing two possible dates: August 17 or August 22, both at 6:30 p.m. The notice requested a response by August 8. While the trial court found that Bourdage denied receiving a paper copy of this notice, she did receive the notice via e-mail. On August 3, Bourdage responded to the e-mail notice, stating that her business was open until 7 p.m. Bourdage also included a statement that she was "done with the harassment. Leave me alone." The board members apparently interpreted this statement to mean that Bourdage was not appearing at any hearing, as they e-mailed Kirsch saying "[a]s you mentioned, [Bourdage] is refusing the hearing." However, nothing in

Bourdage's e-mail states that she was refusing a hearing altogether—only that she worked until 7 p.m.

¶ 41        Even though the board had informed Bourdage that the hearing would be on either August 17 or August 22, no hearing occurred on either date. Instead, the board sent an e-mail to all unit owners on August 22, informing them that a "general board meeting" would occur on August 24 at 6:30 p.m. The e-mail further provided that the meeting would be "immediately adjourned to a private session when the board will hear a violation matter." As the trial court found, the e-mail did not provide any indication as to the subject of the "violation matter." However, Bourdage clearly believed that it was the violations alleged against her, as she responded to the e-mail the same day, again reminding the board that she worked until 7 p.m. and also stating that she was on vacation at the time. The board nevertheless proceeded with its August 24 meeting, which resulted in its August 24 order finding Bourdage liable for the violations set forth in the June 22 notice and fining her $50.

¶ 42        The sequence of events clearly demonstrates that Bourdage did not have an opportunity to defend against the charges at a hearing before the board. The board's contention on appeal that Bourdage was offered the opportunity to appear but failed to avail herself of that opportunity is simply not supported by the record. Bourdage clearly expressed her desire for a hearing. When presented with two possible dates, she informed the board that she worked until 7 p.m.— while she did not expressly connect the dots, working until 7 p.m. would mean that a 6:30 p.m. hearing would not be possible on either date. Despite the fact that the June 22 notice specifically provided that "[o]nce your request [for a hearing] is received, we will advise you of the date, time and location of the hearing; reasonable accommodation will be made if requested within a reasonable time," once Bourdage informed the board of her work hours, that was the end of the matter, with the board concluding that Bourdage was refusing a hearing altogether. The board did not choose *either* of the dates provided to Bourdage but chose a third, completely different, date, without informing Bourdage that her hearing would be held on that date. Instead, the only notice that Bourdage received was a general e-mail notice sent to all unit owners that vaguely noted that the board would "hear a violation matter" at a general board meeting held in two days. Reading between the lines, Bourdage *again* reminded the board that she worked until 7 p.m. and also reminded them that she was on vacation, both things that Bourdage said she had "repeatedly told the board." Despite Bourdage's clear interest in participating in the matter, the board nevertheless proceeded to rule on the violations on August 24.

¶ 43        We take no issue with the board's comment that due process is not denied where a party fails to avail themselves of an opportunity offered to them. See *Lescher v. Barker*, 57 Ill. App. 3d 776, 783 (1978). However, that is not what occurred in the instant case, and the board's arguments to the contrary are disingenuous. In its brief, the board suggests that Bourdage "neglected to select either hearing date by 08/08/2017 as required by the [hearing notice] Email." The board also claims that, with respect to the August 24 meeting, "[d]efendant chose not to attend in person, via counsel, or ask the Board to continue the hearing that was set to occur at a meeting she knew was taking place on 08/24/2017." The board concludes that "[s]ince due process does not require a tribunal to force a respondent to participate in the process[,] the Board proceeded with the hearing, and entered a fine."

¶ 44    However, reaching these conclusions requires completely ignoring the evidence presented at trial. Even looking solely to the exhibits,[6] it is clear that Bourdage was in frequent communication with the board with respect to the scheduling of the hearing and repeatedly flagged that the time proposed for the hearing conflicted with her work hours and scheduled vacation. The scheduling of the hearing should not have been a take-it-or-leave-it proposition, especially where the notice provided to Bourdage as to scheduling expressly provided that reasonable accommodations would be made if requested in a timely manner. Instead, the board ignored Bourdage's conflicts as to the proposed dates, scheduled a different date altogether—at a time that they already knew caused a conflict with Bourdage's work hours and scheduled vacation—and gave Bourdage only the general notice provided to all other unit owners, despite the fact that it was her actions that were under review. The board then proceeded with the meeting despite knowing that Bourdage was unable to attend. We agree with the trial court that the board's actions here in no way provided Bourdage with "notice and an opportunity to be heard" as required by the Condominium Property Act. See 765 ILCS 605/18.4(*l*) (West 2018). Accordingly, the board did not properly impose the fine that served as the basis of the eviction action, and the trial court appropriately declined to enter an eviction order. See 735 ILCS 5/9-111(a) (West 2018) (the trial court shall enter an eviction order "if the court finds that the expenses or fines are due to the plaintiff").

¶ 45    We do not find persuasive the board's contention that the November 20 letter gave Bourdage a "third opportunity to be heard" by offering to vacate the August 24 order. The trial court found that "[t]he fact that the Board may have given Bourdage the option of appealing the [August 24] Order does not cure the deficiencies of notice and deprivation of being heard at the [violation] hearing on August 24th." We agree. The board cites the United States Supreme Court case of *Armstrong v. Manzo*, 380 U.S. 545 (1965), in support of its claim that "the option of vacating the [August 24] Order and having a new hearing does cure any due process deficiencies." However, that case does not support its position. In the *Armstrong* case, the United States Supreme Court noted that having a hearing on a motion to vacate does not cure the error of failing to give a party proper notice because the petitioner was required to first face the task of overcoming an adverse judgment against him, a burden that he would not have faced if he had received proper notice and appeared in the original proceeding. *Armstrong*, 380 U.S. at 551. Instead, the only way to "wipe[ ] the slate clean" would have been to grant the motion to set aside the judgment and consider the case anew. *Armstrong*, 380 U.S. at 552. In the case at bar, the November 20 letter did not offer to "wipe the slate clean" and hear the case anew. It only provided that the board "will allow you to ask the Board to vacate or nullify the 08/24/2017 order." In other words, Bourdage would first be required to convince the board to have the August 24 order vacated and reheard and then would be required to defend herself against the charges rendered against her if she succeeded. This is the same type of extra burden that the *Armstrong* Court found inadequate to cure deficient notice, and we agree with the trial court that the November 20 notice did not cure the board's previous errors.

¶ 46    Since we have concluded that the trial court properly denied the board's request for an eviction order, we have no need to consider the board's challenges to the trial court's findings as to the procedures of the hearing itself. However, we decline to order the trial court to strike

---

[6]As noted, we lack a report of proceedings and have only a bystander's report of the trial.

its findings, as requested by the board.

¶ 47                                    II. January 31 Order

¶ 48    The board also claims that the trial court erred in finding that the January 31 order could not serve as the basis of its eviction claim because the board did not issue a second 30-day demand letter. The board does not dispute the fact that it did not issue a demand letter based on the violations contained in the January 31 order. Instead, the board claims that it was not required to issue such a letter because "[n]othing in the [Forcible Entry and Detainer] or [C]ondominium [P]roperty [A]cts state a new demand must be sent to maintain an eviction cause of action each time new assessments become due during the pendency of the action." We have no need to discuss whether the board's statement of law as to assessments is accurate because the eviction action in the instant case was based on nonpayment of a fine, not a monthly assessment. This is not a case in which Bourdage was charged a monthly assessment and did not pay. Instead, in the case at bar, Bourdage was fined for specific, discrete incidents in which she allegedly violated the association's declaration and bylaws. The violations that formed the basis for the August 24 order were completely separate from the violations that formed the basis for the January 31 order; the only relationship was that the January 31 violations were subject to higher fines because Bourdage had been previously cited for other violations.

¶ 49    Under section 9-104.1(a) of the Forcible Entry and Detainer Act:

> "[I]n case of condominium property, the demand shall give *** to the condominium unit owner *** at least 30 days to satisfy the terms of the demand before an action is filed. In case of a condominium unit, the demand shall set forth the amount claimed which must be paid within the time prescribed in the demand and the time period or periods when the amounts were originally due ***. The amount claimed shall include regular or special assessments, late charges or interest for delinquent assessments, and attorneys' fees claimed for services incurred prior to the demand." 735 ILCS 5/9-104.1(a) (West 2018).

In the case at bar, the demand letter, which was dated October 27, 2017, provided that Bourdage owed $5109.12 "in common expenses and fines." The letter further provided that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay this amount may have increased." This demand letter was clearly based solely on the violations contained in the August 24 order and nothing else. We cannot read this demand letter as encompassing any and all future fines, as we would be required to do were we to accept the board's position.

¶ 50    We find unpersuasive the board's attempts to characterize the additional fines based on the January 31 order as "notice errors" that do not invalidate the notice. The omission of the January 31 fines from the demand letter cannot be characterized as a simple error—indeed, there had not even been a hearing on the violations yet at the time of the demand letter, so they could never have been included in that letter. This distinguishes the present situation from the cases cited by the board, in which the demand letter requested the incorrect amount. See *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263, 272-73 (1998) (the incorrect calculation of past-due rent in demand did not invalidate notice); *Elizondo v. Medina*, 100 Ill. App. 3d 718, 721 (1981) (same).

- 12 -

¶ 51    In the case at bar, Bourdage allegedly committed several violations of the association's declaration and bylaws, which resulted in the imposition of a fine on August 24. The October 27 demand letter gave Bourdage 30 days to pay the unpaid fine and attorney fees relating to the August 24 order. Bourdage then allegedly committed different violations, resulting in the imposition of fines on January 31. If the board desired to evict Bourdage based on the nonpayment of the fines relating to the January 31 order, it was required to first demand payment of those fines by issuing a demand letter as provided in section 9-104.1(a) of the Forcible Entry and Detainer Act. Since it did not do so, the trial court properly did not consider the fines resulting from the January 31 order as a basis for the eviction action.

¶ 52                                          CONCLUSION

¶ 53    For the reasons set forth above, we affirm the trial court's judgment. The court properly declined to enter an eviction order based on the nonpayment of the fine imposed in the August 24 order because Bourdage was not provided with notice and an opportunity to be heard before the board issued its order. Additionally, the court properly found that the board could not seek to evict Bourdage based on nonpayment of the fines in the January 31 order because the board did not issue a demand letter as required by the Forcible Entry and Detainer Act.[7]

¶ 54    Affirmed.

---

[7]We further observe that Bourdage is under the impression that she has a right to keep her business open until 7 p.m. and that the board must schedule a hearing during the hours of the day or night to accommodate her. The board should work with Bourdage to formulate a reasonable time for hearing, and if Bourdage must close her business a few hours early to appear at a hearing, she should be required to do so.

- 13 -