25 August 1999

No. 2--98--1220

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

BETH A. HUBERT, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

) 

v. ) No. 96--L--0508

  )

CONSOLIDATED MEDICAL )

LABORATORIES, LAKE FOREST )

HOSPITAL, AND HIGHLAND PARK )

HOSPITAL, ) Honorable

) Jack Hoogasian,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

In this retaliatory discharge action, plaintiff, Beth A. Hubert, appeals the trial court's granting of summary judgment in favor of defendants, Consolidated Medical Laboratories (CML), Lake Forest Hospital (Lake Forest), and Highland Park Hospital (Highland Park), as well as the trial court's orders denying her the right to take certain discovery and dismissing her allegations of willful and wanton conduct and her prayer for punitive damages.  We affirm.

As a preliminary matter, a motion to amend the record on appeal filed by Hubert, objections thereto, and Hubert's response in support of her motion were ordered taken with the case.  We find that the supplemental evidence that Hubert requests to include in the record is not necessary for a resolution of this appeal.  We therefore deny Hubert's motion to amend the record on appeal.

Additionally, in its brief, Lake Forest asks this court to strike or disregard portions of Hubert's statement of facts because they violate the supreme court rules.  We agree with Lake Forest that portions of Hubert's statement of facts violate Supreme Court Rule 341(e)(6) (177 Ill. 2d R. 341(e)(6)), in that they are argumentative, conclusory, and not supported by appropriate record citations.  When an appellant's brief improperly includes argument, conclusions, or inappropriate record citations, the appellate court may, in its discretion, strike or disregard those portions.  See 
Brazinski v. Transport Service Co.
, 159 Ill. App. 3d 1061 (1987); see also 
Merrifield v. Illinois State Police Merit Board
, 294 Ill. App. 3d 520 (1997).  "Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted."  
Merrifield
, 294 Ill. App. 3d at 527.  We find that Hubert's statement of facts is not so misleading as to hinder our analysis and that her properly asserted facts, coupled with Lake Forest's and CML's recitations, are sufficient to permit review of this appeal.  We will therefore not strike Hubert's statement of facts in its entirety, but we will disregard those portions that violate the supreme court rules.  We admonish Hubert's counsel for failing to comply with the supreme court rules.

CML was created as a joint venture between Lake Forest and Highland Park.  CML was a clinical laboratory that provided medical testing services such as hematology, cytology, chemistry, microbiology, urinalysis, and histology for hospitals and private physicians.  CML's histology department received biopsied tissue samples and prepared tissue slides so that the tissue samples could then be tested for the presence of disease.  CML contracted with Pathology and Nuclear Medicine Associates (PNMA) to provide pathologists to make diagnoses from the tissue samples.

Hubert was hired by CML in 1985 to work as a part-time histotechnologist.  She later became a certified histotechnologist, and in 1990 Hubert began working full time for CML.

On May 10, 1995, CML received two tissue samples taken from the uterus of a patient at Northern Illinois Medical Center in McHenry, Illinois.  On May 12, 1995, Dr. William Janes, a pathologist employed by PNMA, contacted Hubert and told her that he had lost one of the tissue samples.  Dr. Janes requested that Hubert help him cover up the loss of the tissue sample by creating a new slide with a tissue sample from another patient.  Hubert admits that she initially declined Dr. Janes's request but later acquiesced and prepared the false tissue sample.  Two days later, on May 14, 1995, Hubert informed Sheryl Vance, CML's administrative director, of Dr. Janes's request and her substitution of the tissue sample.  Hubert also advised Cindy Lebak, the supervisor of CML's histology department, of the incident.

An investigation commenced into the incident, and, in May or June 1995, Hubert met with Dr. Joseph Patlovich, CML's executive director, to discuss the tissue substitution incident.  Hubert also met with William Ries, president of Lake Forest, and Peter Friend, vice-president of Highland Park, to discuss the incident.  After completing its own investigation, PNMA terminated Dr. Janes's employment as a pathologist.

On December 4, 1995, CML notified all full-time members of the histology department that it was closing the department and that all employees would be laid off.  CML offered a severance package to all employees affected by the layoff.  Hubert declined the severance package.  At the time of closing the histology department, Harold Pulvermacher was CML's human resources manager, and Joseph W. Plandowski was CML's executive director.

Early in 1996, CML reopened the histology department and Hubert applied for a position.  CML claimed that it did not rehire Hubert because the supervisor of the department had determined that Hubert did not have appropriate education or experience background in immunohistochemistry and DNA ploidy.

On July 16, 1996, Hubert filed a two-count complaint against CML, Lake Forest, and Highland Park.  Count I alleged a retaliatory discharge claim against CML and sought lost income, damages, punitive damages, costs, expenses, and attorney fees.  Count II alleged breach of an implied employment contract against CML, Lake Forest, and Highland Park and sought lost income, costs, and expenses.  On September 11, 1996, Lake Forest moved to dismiss count II of Hubert's complaint.  Lake Forest contended that it had never been Hubert's employer.  Prior to the hearing on the motion to dismiss, Hubert moved to amend her complaint.  On October 9, 1996, the trial court granted Lake Forest's motion to dismiss count II of Hubert's complaint and granted Hubert leave to file a first amended complaint.

Hubert later filed a one-count first amended complaint alleging a retaliatory discharge claim against CML, Lake Forest, and Highland Park.  Hubert also alleged willful and wanton misconduct and sought punitive damages.  In response, Lake Forest moved to dismiss Hubert's first amended complaint, again contending that it had never been Hubert's employer.  The trial court granted the motion to dismiss without prejudice, allowing Hubert 60 days to file her second amended complaint.  In its dismissal order, the trial court ruled that Hubert's first amended complaint "failed to sufficiently plead that Lake Forest Hospital had the authority to discharge Plaintiff from employment at Consolidated Medical Laboratories."

After the dismissal of Hubert's first amended complaint but before the filing of her second amended complaint, Lake Forest and Highland Park moved to quash two subpoenas that Hubert had served on William Ries, the president of Lake Forest, and Peter Friend, the executive vice-president of Highland Park.  Lake Forest and Highland Park argued that no depositions should ensue without a complaint being on file.  The trial court denied the motions to quash and allowed Lake Forest and Highland Park 14 days to file their objections to Hubert's written discovery requests.  Lake Forest then filed its timely objections to Hubert's request for the production of documents.

Subsequently, Hubert filed her second amended complaint containing one count alleging retaliatory discharge against CML, Lake Forest, and Highland Park.  During the pendency of the second amended complaint, Hubert moved to compel CML to provide more specific answers to written discovery and to produce certain documents.  In response, CML argued that the information sought by Hubert was confidential under the Medical Studies Act (735 ILCS 5/8--2101 
et seq.
 (West 1996)).  Lake Forest and Highland Park also responded to the motion to compel, even though that motion was not directed against them, contending that the information sought by Hubert was irrelevant and was not discoverable under the Medical Studies Act, the attorney-client privilege, the work-product doctrine, and the physician-patient privilege.  Hubert's motion to compel was denied by the trial court.

Lake Forest moved to dismiss Hubert's second amended complaint on the grounds that the allegations of willful and wanton misconduct were conclusory and that Hubert failed to sufficiently plead facts supporting an award of punitive damages.  CML and Highland Park joined Lake Forest's motion to dismiss.  Following full briefing on the motion, the trial court dismissed Hubert's second amended complaint and allowed 28 days to file a third amended complaint.

Hubert filed a third amended complaint that contained a single count against CML, Lake Forest, and Highland Park for retaliatory discharge and alleged that willful and wanton conduct warranted punitive damages.  Hubert also included allegations that her discharge violated public policy as set forth in the Illinois Clinical Laboratory and Blood Bank Act (Clinical Laboratory Act) (210 ILCS 25/1--101 
et seq.
 (West 1996)) and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et seq.
 (West 1996)).  Lake Forest moved to dismiss the third amended complaint on the grounds that it had never been Hubert's employer, that the willful and wanton allegations were conclusory, that Hubert alleged no facts to support the award of punitive damages, and that neither the Clinical Laboratory Act nor the Consumer Fraud Act supported Hubert's cause of action.  Highland Park also filed a motion to dismiss.  Following full briefing, the trial court dismissed with prejudice the allegations in Hubert's third amended complaint pertaining to willful and wanton conduct and punitive damages.  The trial court concluded that Hubert's complaint was "woefully lacking what [
sic
] the averments which are necessary for an allegation for punitive damages."  The trial court dismissed the remainder of Hubert's third amended complaint without prejudice, allowing her 28 days to replead the retaliatory discharge claim only.

Hubert moved to reconsider the dismissal of her punitive damages claim on the ground that the depositions of Lake Forest president William Ries and Highland Park executive vice-president Peter Friend would enable her to assert allegations supporting such a claim.  At the hearing on the motion to reconsider, the trial court suggested that Hubert's counsel had ample time and opportunity since the filing of her original complaint to conduct discovery and find facts supporting her claim.  The court noted that Hubert could have asked the court to produce Ries and Friend but that she had not.  The court then asked Hubert's counsel how many depositions were taken, and Hubert's counsel answered that only one deposition was taken, that of a CML employee hired the day after Hubert was fired.  The trial court denied Hubert's motion to reconsider, noting that if Hubert ever had any new evidence she could present it to the court at that time.

Hubert filed a fourth amended complaint for retaliatory discharge.  The complaint did not include a punitive damage claim but added allegations concerning the Clinical Laboratory Act and the Consumer Fraud Act.  CML, Lake Forest, and Highland Park answered the fourth amended complaint, raising affirmative defenses, which Hubert answered.

Lake Forest filed objections to Hubert's second set of interrogatories.  During the pendency of the fourth amended complaint, the trial court continued Lake Forest's motion to compel Hubert's responses to written discovery.

Lake Forest then moved to strike any reference to the Consumer Fraud Act from Hubert's fourth amended complaint on the ground that Hubert's discharge did not come within the purview of that Act.  CML and Highland Park joined the motion.  After briefing, the trial court granted the motion to strike and dismissed with prejudice all references to the Consumer Fraud Act.

Hubert then filed motions to compel the depositions of William Ries and Peter Friend.  Attached to one of the motions was a correspondence from the counsel for Lake Forest explaining that it would not produce Ries for deposition until Hubert had complied with written discovery requests.  Lake Forest and Highland Park responded that neither Ries nor Friend should be deposed, since Hubert had produced no evidence that Ries, Friend, or the hospitals were involved in the decision to terminate Hubert's employment.  The trial court ordered Hubert's deposition to proceed and continued Hubert's pending motions to compel the depositions of Ries and Friend.  Subsequently, the trial court denied Hubert's motions to compel the depositions of Ries and Friend.

CML, Lake Forest, and Highland Park each moved for summary judgment.  Lake Forest and Highland Park argued that no genuine issue of material fact existed as to the fact that CML was Hubert's employer, that they were not her employer, and that they had no part in any act or omission that proximately caused Hubert's termination.  Relying on an affidavit of its human resources manager, CML argued that no genuine issue of material fact existed that Hubert was terminated solely because CML closed its histology department and laid off all employees in that department.

Hubert's counsel filed an affidavit in support of Hubert's response to the motions for summary judgment, asserting that the trial court's denial of her motion to compel the depositions of Ries and Friend had prevented her from obtaining evidence with which to respond to the motions for summary judgment.  Hubert's counsel's affidavit asserted that Hubert believed that, if sworn, Ries and Friend would testify as to their investigation of the incident reported by Hubert and to their involvement in the decision to terminate Hubert and the other histotechnologists at CML stemming from the tissue-switching incident.  Hubert's counsel concluded that the denial of Hubert's motion to compel these depositions extraordinarily prejudiced Hubert.  Lake Forest moved to strike Hubert's counsel's affidavit, arguing that it improperly consisted of conclusions rather than facts admissible into evidence.

The motions for summary judgment and the motion to strike were heard by the trial court.  It first ruled that the affidavit of Hubert's counsel, attached in support of Hubert's response to the motions for summary judgment, be stricken because the affidavit "is replete with conclusions and does not state anything of a personal nature."  The trial court concluded that Lake Forest and Highland Park were entitled to summary judgment because a plaintiff cannot maintain a cause of action for retaliatory discharge against nonemployers or those persons or entities not involved in the termination decision.  The trial found that Hubert had failed to create a genuine issue of material fact as to the manner in which she was discharged; Hubert did not refute the affidavit of CML's human resources manager explaining the reason for her termination; Hubert never deposed the human resources manager; and the trial court had to take the human resources manager's affidavit as "absolutely true and correct."  The trial court concluded that, because Hubert did not have any evidence against CML, it too was entitled to summary judgment.  The trial court therefore granted summary judgment in favor of all three defendants.  Hubert timely appealed.

Hubert first argues that the trial court erred in entering summary judgment because a genuine issue existed as to whether Hubert was terminated in retaliation for the tissue-switching incident.  When a plaintiff appeals from a trial court's order of summary judgment in favor of a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005 (West 1996);  
Shanley v. Barnett
, 168 Ill. App. 3d 799, 802 (1988).  The court in 
Shanley
 summarized the proper procedure in ruling on a motion for summary judgment as follows:

"If the record shows that there is a genuine issue as to any material fact, summary judgment should not be granted.  In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party.  If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable.  Conversely, when the evidence shows that no genuine issues of material fact have been raised, the moving party is entitled to judgment as a matter of law."  
Shanley
, 168 Ill. App. 3d at 802.

We review the trial court's entry of summary judgment 
de novo
 and may affirm on any ground in the record, regardless of whether the trial court relied upon it and regardless of whether the trial court's reasoning for granting summary judgment was correct.  
Dixon v. Mercury Finance Co.
, 296 Ill. App. 3d 353, 357 (1998).  With these principles in mind, we affirm the trial court's entry of summary judgment in favor of defendants but for reasons different from those relied upon by the trial court.

CML argues, for the first time on appeal, that Hubert's claim should be barred by the "unclean hands doctrine" because her claim of retaliatory discharge is based on reporting her own misconduct in making a false set of tissue slides.  Hubert has failed to address this argument in her reply brief.

The Latin phrase 
ex dolo malo non oritur actio
, meaning "out of fraud no action arises," lies at the foundation of the well-

established principle of public policy that no court will lend its aid to a person who founds his or her cause of action upon an immoral or illegal act.  Black's Law Dictionary 567 (6th ed. 1990); 
Levy v. Kansas City, Kansas
, 168 F. 524, 525 (8th Cir. 1909); 
Mettes v. Quinn
, 89 Ill. App. 3d 77, 80 (1980).  " 'This refusal to aid derives not from the consideration of the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of the Government.' "  
Mettes
, 89 Ill. App. 3d at 80, quoting 
Bonnier v. Chicago Burlington & Quincy R.R. Co.
, 351 Ill. App. 34, 52-53 (1953), 
rev'd on other grounds
, 2 Ill. 2d 606 (1954), 
cert. denied
 348 U.S. 830, 99 L. Ed. 655, 75 S. Ct. 53 (1954).

Furthermore, the objection to recovery based upon a plaintiff's fraud cannot be obviated or waived, and "[i]t was one which the court itself was bound to raise in the interest of the due administration of justice."   
Oscanyan v. Winchester Repeating Arms Co.
, 103 U.S. 261, 267, 26 L. Ed. 539, 542 (1881).  Courts will take judicial notice that the cause of action is based in whole or in part upon an immoral or illegal transaction regardless of the fact that such defense is not pleaded.  
Higgins v. McCrea
, 116 U.S. 671, 685, 29 L. Ed. 764, 769, 6 S. Ct. 557, 564 (1886).

As indicated in Hubert's brief, her cause of action is based on whether she was terminated in retaliation for the tissue-

switching incident.  As such, we can offer no relief to Hubert.  The record is clear that Hubert, as a histotechnologist, was responsible for making laboratory slides from biopsied tissue specimens for examination by pathologists.  Hubert admitted that Dr. Janes, a pathologist, informed her that he had lost a tissue sample and asked Hubert to make a false set of slides from another patient's tissue sample.  Hubert initially refused Dr. Janes's request but eventually acquiesced and prepared the false tissue slide.

Hubert would now have us allow recovery from the defendants based on circumstances directly arising from her own misconduct.  Hubert alleges that she was told she would not lose her job based on her reporting of the incident.  CML claims that Hubert was laid off due to the closing of its histology department.  Even taking Hubert's allegations as true, we will not aid a wrongdoer who invokes the court's jurisdiction to profit from her own misconduct 
by recovering damages.  See 
Mettes
, 89 Ill. App. 3d at 80.  This is precisely the thrust of Hubert's cause of action and the trial court, therefore, did not err in granting summary judgment in favor of defendants.

We note that it would be no defense to the doctrine of unclean hands for Hubert to assert that she acted on the instruction of Dr. Janes.  As the Supreme Court of Georgia noted in 
Little v. Southern Ry. Co.
, 47 S.E. 953, 955 (Ga. 1904):

"It would be contrary to public policy for courts to relieve a citizen of the consequences of his act in violating the law or his duty to society, and it cannot be any defense that some one else either assisted in the offense or commanded him to do it."

Based on our holding in this appeal, we need not address Hubert's other issues on appeal.

For the foregoing reasons, we affirm the granting of summary judgment in favor of defendants by the circuit court of Lake County. 

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., concur.