2021 IL App (1st) 200879-U
No. 1-20-0879
Order filed May 17, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| BARBARA ANDERSEN, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County. |
| | ) |
| v. | ) No. 19 L 6119 |
| | ) |
| EDWARD LESZYNSKI, | ) |
| | ) Honorable |
| Defendant-Appellee. | ) Jerry A. Essig, |
| | ) Judge, presiding. |
| | ) |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court orders dismissing plaintiff's intentional interference with contract claims, granting summary judgment to defendant on accounting malpractice claim, and dismissing complaint with prejudice are affirmed.

¶ 2    Barbara Andersen sued her former neighbor, Edward Leszynski, alleging he engaged in accounting malpractice in preparing her tax return and advising her she could make deductions that an Internal Revenue Service determined were impermissible. She sought nearly $70,000 in damages, the amount she agreed to pay to settle the $126,749 she owed to the IRS after an audit.

In an unrelated count, Andersen asserted Leszynski broke a promise to her by listing his home for sale at a "low-ball" price while her home was on the market, reducing her property's value. She alleged Leszynski intentionally interfered with contracts with her real estate broker and the eventual purchaser.

¶ 3    The trial court granted Leszynksi's motion to dismiss the interference with contract claim under section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-616) (West 2018). The trial court held that Andersen failed to adequately plead Leszynski acted with "actual malice" when he listed his home for sale, which was necessary to overcome his privileges as a homeowner and a competitor in the real estate market. The court also found the complaint failed to allege facts essential for proceeding with the claim.

¶ 4    Leszynski also filed a summary judgment motion on the accounting malpractice claim, which the trial court granted. The court found Andersen suffered no damages, but rather received a "windfall" by paying $69,219.36, after the IRS determined she owed $126,749. Finding no claims remained, the trial court dismissed Andersen's complaint with prejudice.

¶ 5    Andersen contends the trial court erred by (i) dismissing her intentional interference with contract claims on privilege grounds, (ii) granting summary judgment when she raised a disputed question of fact that Leszysnki's negligent tax advice damaged her, and (iii) dismissing her complaint with prejudice. We affirm. The trial court properly found that Andersen failed to satisfy her burden to plead that Leszynski acted with malice or without justification when he listed his home for sale. Andersen's brief does not address the trial court's findings that the complaint failed to satisfactorily allege facts showing intentional interference with current and potential contracts, so Andersen waived those issues on appeal. As to Andersen's accounting malpractice claim, Andersen failed to show she incurred damages when her tax bill was less than it would have been

absent Leszynski purportedly negligent tax preparation and advice. Further, the trial court did not abuse its discretion by dismissing the complaint with prejudice when Andersen failed to present an amended complaint showing she could overcome the pleading defects.

¶ 6                                     Background

¶ 7     Leszynski is an accountant and financial adviser. Andersen paid him $1,600 to prepare her 2012 tax returns. Andersen, an attorney, also engaged in extensive stock trading. In preparing Andersen's 2012 tax return, Leszynski offset her stock trading losses against her law practice income. Leszynksi calculated Andersen's total federal income taxes for 2012 to be $12,544, resulting in a refund of more than $42,000. Andersen prepared her own 2013 tax returns and made the same deduction for stock trading losses as Leszynski had advised, resulting in taxable income of $58.

¶ 8     In 2015, the IRS audited Andersen. The IRS determined that Andersen improperly deducted her stock trading losses, underpaying her federal income taxes for 2012 and 2013 by $126,749. Andersen settled with the IRS by agreeing to pay $69,219.36. Andersen decided to sell her home to help pay her IRS debt. She contends she could not obtain the highest possible sales price because Leszynski listed his neighboring property for sale at a "low-ball" figure, despite promising not to sell while her home was on the market.

¶ 9     Andersen's second amended verified complaint alleges accounting malpractice (count I) and intentional interference with existing and potential contracts (count II). In count I, Andersen alleged Leszynski engaged in malpractice in deducting stock trading losses from her law practice income on her 2012 federal income tax return. She further alleged that although Leszynski did not prepare her 2013 return, she relied on his advice in deducting stock trading losses on her 2013

return. Andersen sought damages of $69,291.36, the amount she paid to settle her tax liability for 2012 and 2013, and a refund of the $1,600 she paid Leszynski to prepare her 2012 return.

¶ 10    Count II alleged Leszynski "intentionally interfered with Andersen's ability to contract at the fair market value of her home by listing his neighboring property at a low-ball figure." Specifically, Andersen alleged that Leszynski broke an oral promise to her not to sell his property while Andersen listed hers for sale. This, Andersen maintained, impaired her "existing contract with her broker" and her "ability to contract with prospective buyers in the price range she had originally purchased her home." She claims Leszynski's intentional interference with her existing contract with her broker and the prospective contract (or economic advantage) with a buyer resulted in damages exceeding $30,000.

¶ 11    Leszynski filed a motion to dismiss count II under section 2-615, arguing that Andersen did not state a claim for tortious interference with contract by failing to allege facts establishing (i) Andersen had a contract with the broker, (ii) Leszynski knew about the contract with the broker, (iii) Leszynski induced a breach by listing his property for sale, or (iv) Andersen breached the contract. Leszynski also asserted his property owner's privilege barred Andersen's tortious interference with contract claim, contending he had a right to possess, use, and dispose of his property as he saw fit, and Andersen failed to overcome the privilege by pleading sufficient facts showing his conduct was unjustified or malicious.

¶ 12    Leszynski also argued for dismissal of Andersen's interference with a prospective economic advantage claim. He argued that the claim did not plead sufficient facts showing (i) Andersen had a reasonable expectancy of a valid business relationship with a specific third party, (ii) Leszynski knew about her expectancy of a business relationship with that third party, and (iii) Leszynski took any action directed toward that third party to interfere with Andersen's expectancy

of a business relationship. Leszynski added that the property owner's privilege and the competitor's privilege applied. Under the competitor's privilege, a party may divert business from competitors generally and from particular competitors if acting with the intent, at least in part, to further business and not solely by spite or ill will. *Soderlund Bros. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1995).

¶ 13    The trial court granted the motion to dismiss count II. Preliminarily, the court noted that by combining two separate causes of action in the same count—tortious interference with contract and tortious interference with prospective economic advantage—Andersen violated section 2-603 of the Code, which alone provides grounds for dismissal. Nevertheless, the court decided that "in the interests of judicial economy," it would address the remaining arguments.

¶ 14    As to both claims, the trial court found that Leszynski had a privilege as a property owner to use, possess, and dispose of the property as he saw fit and a privilege to compete in an open real estate market. The court noted that the parties disagreed as to who had the burden to plead the privileges and concluded that "[w]here, as here, the privilege arises directly from the facts pled, it is plaintiff's burden to plead around the privilege." The trial court found that Andersen's complaint failed to plead sufficient facts showing Leszynski acted with actual malice or without justification. The court stated:

> "[P]laintiff alleges that Leszynski knew his low-ball price would impact plaintiff's effort
> to sell her property, *** Leszynski had "no financial need" to sell his property, *** and
> Leszynski had no "good faith justification *** to sell the home when he did," ***. These
> allegations alone do not satisfy the requirements of either the Restatement (Second) of
> Torts or of *Miller [v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369 (2007)]. Leszynski
> had the right to sell his home without a "financial need" to do so, even if that sale made it

more difficult for Andersen to sell her home. Moreover, Leszynski had the right to price his home as he wished, even if that pricing had a deleterious effect on Andersen's ability to obtain the price she wanted. Andersen does not allege that Leszynski never intended to sell his home or that he never intended to honor an offer at his listing price. Nor does she allege any other wrongful conduct. She has not met her burden to plead intentional and malicious conduct sufficient to overcome the privilege."

¶ 15    The court found that aside from failing to overcome Leszynski's privileges, Andersen "cannot plead the essential elements of a claim for tortious interference with contract for either of the contracts she identifies." The complaint failed to adequately allege the contract's terms with the broker or allege any interference with that contract. "None of Leszynski's conduct was aimed at Andersen's relationship with her broker. Nothing he did prevented the broker from performing. Nor does Andersen allege that the broker failed to perform. Without interference, there can be no claim for tortious interference." Similarly, the court found that Andersen's complaint did not adequately allege (i) a contract with an eventual purchaser, (ii) Leszynski knew about the contract when he put his property on the market, or (iii) the contract was breached given that she sold her home. The trial court held the complaint did not satisfy the pleading requirements, having failed to identify a third-party or an action directed to a third-party, but instead alleging Leszynski's conduct was directed toward her and may have had an impact on the price third parties would pay for her property.

¶ 16                    Summary Judgment—Accounting Malpractice

¶ 17    Leszynski then moved for summary judgment on count I under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2018)), asserting that Andersen could not show his alleged accounting malpractice damaged her when she paid the IRS less money than she would have paid had her tax

returns been error free. Further, Leszynski argued, she cannot recover the $1,600 fee she paid him to prepare her 2012 tax return because she would have to pay that amount even if he had not included the improper deductions. Moreover, he asserted, even if the $1,600 fee is considered an item of damages, it is more than offset by the $57,458.64 in savings Andersen realized as a result of the alleged negligence.

¶ 18　In her response, Andersen argued for the first time that in addition to the IRS debt, Leszynski's negligent tax advice injured her because she would have avoided intentionally incurring stock trading losses. She attached an affidavit to support her argument and requested leave to amend her complaint to clarify that Leszynski was not merely her former tax preparer but served also as her former financial advisor.

¶ 19　The trial court granted the motion for summary judgment, finding that for 2012 and 2013, the uncontroverted evidence is that Andersen paid $69,219.36 less than she would have paid had Leszynski properly calculated her taxes. The court concluded that Andersen received a "windfall" rather than incurring damages and, thus, had no claim for accounting malpractice. The trial court noted that Andersen's assertion that she would not have taken stock trading losses had she known about their non-deductibility was entirely new to the case. Andersen did not allege it in her second amended complaint or disclose damages related to stock trading losses anywhere in her discovery responses; "to the contrary, when asked to produce documents relating to her stock trading activity, she objected on the basis of relevance." Relying on *Abramson v. Mardersosian*, 2018 IL App (1st) 180081, ¶¶54-56, the court found that where a defendant is entitled to judgment as a matter of law on the claims pled, it cannot deny summary judgment based on an unpled theory the plaintiff raises for the first time in its opposition to the motion.

¶ 20　The trial court further refused to consider Andersen's "request" to amend her complaint. The court noted that in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992), the Illinois Supreme Court outlined factors a trial court must review in exercising its discretion to permit or deny leave to amend a pleading: (i) whether the proposed amendment would cure the defective pleading, (ii) whether other parties would sustain prejudice or surprise by the proposed amendment, (iii) whether the proposed amendment is timely, and (iv) whether the plaintiff had previous opportunities to amend the pleading. Andersen's "request" does not address any of these factors. "In sum, Andersen cannot improperly introduce a new theory of liability without amending her complaint. Absent a formal motion and a proposed amended complaint from which the court can determine whether the *Loyola Academy* factors are met, the court will not entertain such an informal request." Finding that no claims remained, the trial court dismissed the case with prejudice.

¶ 21　　　　　　　　　　　　　　　Analysis

¶ 22　Preliminarily, Andersen requests we strike Leszynski's statement of facts, which she asserts to be misleading, superfluous, and argumentative in violation of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341(h)(6) provides, in relevant part, that an appellant's brief must include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment ***." The appellee's brief need not include a statement of facts but if it does, the brief must comply with the requirements of Rule 341(h)(6). Ill. S. Ct. Rule 341(i) (eff. Oct. 1, 2020).

¶ 23　We have discretion to strike improper portions of a brief. We decline to do so here. Although Leszynksi's statement of facts reiterates some facts in Andersen's brief, it does not include improper argument or comment. And to the extent Leszynski's brief violates Rule 341, if

at all, the violations lack the kind of flagrancy that "hinder[s] or preclude[s] review" (internal quotation marks omitted) *Hubert v. Consolidated Medical Laboratories*, 306 Ill. App. 3d 1118, 1120 (1999)). Accordingly, we will not strike the statement of facts but "will simply disregard any portions we believe violate Rule 341." *In re Marriage of Milne*, 2018 IL App (2d) 180091, ¶ 22 n.4.

¶ 24                    Intentional Interference with Contracts Claims

¶ 25    As an initial matter, we address Leszynski's contention that count II of Andersen's complaint violates section 2-603 of the Code by seeking multiple causes of action in a single count. Section 2-603(b) requires that "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count * * * and each count * * * shall be separately pleaded, designated and numbered." 735 ILCS 5/2-603(b) (West 2018). The purpose of section 2-603 is to give notice to the court and the parties of the claims. *Cable America Inc. v. Pace Electronics, Inc.,* 396 Ill. App. 3d 15, 19 (2009). Failure to comply with section 2-603 may be grounds for dismissal of the complaint. *Id.*; *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 938 (2001). We review the court's decision to dismiss a complaint under section 2-603 for an abuse of discretion. *Cable American, Inc.*, 396 Ill. App. 3d at 22.

¶ 26    We agree with the trial court that count II of Andersen's complaint violates section 2-603 by including in the same count claims of intentional interference with an existing contract and intentional interference with prospective economic advantage. But the complaint was sufficient to give Leszynski notice of the claims presented and to allow him to answer. Like the trial court, in the interest of judicial efficiency, we will proceed to the merits.

¶ 27    Andersen contends the trial court erred in granting Leszynski's motion to dismiss because the question of whether a defendant's interference with a contract was justified or privileged

presents an affirmative defense that the defendant must prove, and the trial court erred in placing the burden on her to plead actual malice. Andersen acknowledges that had she pled Leszynski had a privilege, she would be required to prove actual malice, but that the privilege was raised by Leszynski in his motion to dismiss, and he then must plead and prove privilege as an affirmative defense. Alternatively, she contends that she pled that Leszynski acted with malice, that is, without justification, by alleging he knew listing his property at a "low-ball" price would affect the marketability of her property and that he had no financial need to sell as evidenced by his later decision to take his home off the market.

¶ 28   A motion to dismiss under section 2-615 challenges the complaint's legal sufficiency based on defects apparent on its face. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. We construe the complaint's allegations in the light most favorable to the plaintiff and determine whether the allegations state a cause of action on which to grant relief. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. We take as true all well-pleaded facts and all reasonable inferences drawn from those facts. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 5. Dismissal requires finding no set of facts that would permit the plaintiff to recover. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. Review of a section 2-615 dismissal is *de novo*. *Id*.

¶ 29   As noted, the trial court granted Leszynski's motion to dismiss on two grounds: (i) Leszynski had a property owner's privilege and a competitor's privilege and that Andersen failed to properly plead he acted with actual malice to overcome those privileges and (ii) Andersen failed to adequately plead the elements of claims for intentional interference with contract or with economic advantage.

¶ 30    Illinois Supreme Court Rule 341(h)(7) states that an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Supreme Court Rule 341(h)(7) and is waived. *Vincent v. Doebert*, 183 Ill .App. 3d 1081, 1087 (1989). Andersen's brief does not address the trial court's findings that her complaint failed to allege sufficient facts to establish claims for intentional interference with contract and intentional interference with economic advantage, waiving that issue. Because these deficiencies in Andersen's brief were a separate basis for the trial court's dismissal of count II, we may affirm on these grounds alone. Nonetheless, we will address Andersen's contention that the trial court erred in finding she had a duty to plead sufficient facts showing Leszynski acted with actual malice or without justification and that she failed to meet that burden.

¶ 31    Illinois courts "recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care v. Mt. Vernon Hospital*, 131 Ill. 2d 145, 156 (1989). In *HPI Health Care*, our supreme court held that "where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Id.* at 156. "The clear and unmistakable holdings of *** *HPI Health Care*," as *Roy v. Coyne*, 259 Ill. App. 3d 269, 283 (1994) observed, "[is] that where the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably, *i.e.*, inconsistent with his privilege." But, "if the complaint may not fairly be said to introduce the existence of a recognized statutory or common

law privilege, it is not the duty of the plaintiff to plead and prove lack of justification, but it becomes the defendant's burden to plead and prove the privilege as an affirmative matter, for there may be no way for a plaintiff to know in advance whether the defendant enjoys a privilege or, indeed, whether he will ever claim that he does." *Id*.

¶ 32　Relying on *Coyne*, Andersen contends her second amended complaint neither alleges nor implies that Leszynksi's conduct was privileged and Leszynksi had the burden to plead and prove the privileges applied. But the test set forth in *HPI Health Care* and used in *Roy* is not whether the plaintiff subjectively considers the defendant's conduct to be privileged or whether the plaintiff expressly states the legal conclusion that the defendant's conduct is privileged in the complaint. Rather, as the trial court found, the test asks whether the factual allegations of the complaint give rise to the privileges at issue, that is, whether the privilege is apparent from the facts alleged in the complaint. Applying this standard, Andersen's factual allegations that Leszynski was a property owner gave rise to his privileges to dispose of the property as he saw fit and privilege to compete in an open real estate market. The trial court correctly held that Andersen had the burden to plead sufficient facts to overcome the privileges.

¶ 33　Andersen contends that even if it was her burden to plead sufficient facts showing Leszynski acted with malice or without justification, her second amended complaint met that burden. We disagree. None of her allegations suggest anything other than Leszynski's economic self-interest as a property owner and competitor. She alleged that Leszynski did not consult with her before listing his home for sale at an allegedly "low-ball price," had no financial need to sell the property, and knew that listing would have a deleterious effect on her ability to sell her home. Yet, Leszynski had the right to sell his home at the price of his choice, even if his decision adversely affected Andersen's ability to obtain the price she sought for her property. Further, as

the trial court noted, Andersen does not allege Leszynski never intended to sell his property or never intended to honor an offer at his listing price. Thus, the trial court appropriately dismissed count II under section 2-615.

¶ 34                                  Accounting Malpractice

¶ 35    Andersen contends the trial court erred in entering summary judgment on the accounting malpractice claim (count I). Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in the opponent's favor. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id*. A court should grant summary judgment when the right of the movant is clear and free from doubt. *Id*. We review the trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 36    To prevail on a professional negligence claim, a plaintiff must prove (i) the existence of a professional relationship, (ii) a breach of duty arising from that relationship, (iii) causation, and (iv) damages. See *5K Partners I, LP v. Metro Consultants*, 408 Ill. App. 3d 127, 129 (2011). Like other tort and contract claims, damages in a professional negligence case should put the plaintiff in the same position he or she would have been in had the professional not been negligent. See, e.g., *Meriturn Partners, LLC v. Banner v. Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 18. In the context of tax preparer liability, " 'the appropriate measure of damages is the difference between

what the (taxpayers) would have owed in any event if the tax returns were properly prepared, and what they owe now because of their accountant's negligence, plus incidental damages.' " *Dail v. Adamson*, 212 Ill. App. 3d 66, 68 (1991) (quoting *Thomas v. Clearly*, 768 P. 2d 1090, 1091-92 n. 5 (Alaska 1989)).

¶ 37    All agree that had Leszynski not included the improper deductions in Andersen's 2012 return (and she had not made those deductions in 2013 return), she would have had to pay $126,749 income taxes for those years. She still would have paid Leszynski $1,600 for his work on the 2012 return. In settling the IRS claim, Andersen paid $69,219.36 or $57,529.64 less than she would have paid absent the improper deductions in 2012 and 2013. Thus, because her tax bill for those two years was less than it would have been, Andersen cannot prove damages from Leszynski's alleged malpractice.

¶ 38    Andersen contends the trial court erred in refusing to consider an argument she raised for the first time in her response to Leszynski's motion for summary judgment. That argument alleged Leszynski's negligent tax advice caused damages because she would not have intentionally incurred stock trading losses had she known they were not permissible tax deductions. She asserts that Leszynski falsely characterized himself as a tax preparer rather than a tax advisor, and under the law applicable to tax advisors, she, at minimum, raised a question of fact as to whether Leszynski's negligent advice damaged her.

¶ 39    We agree with the trial court's finding that it could not deny summary judgment based on an unpled theory raised for the first time in opposition to the motion. A trial court ruling on a motion for summary judgment looks to the pleadings to determine the issues in controversy. [Citation.] " 'If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint.' " *Abramson v.*

*Marderosian*, 2018 IL App (1st) 180081, ¶ 55 (quoting *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008) (rejecting plaintiff's oral request to amend complaint 'where a new theory was raised for the first time in opposition to a motion for summary judgment, and where plaintiff failed to provide to the trial court any proposed amended complaint from which it could determine whether to amend under the standard set forth in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992)). Andersen did not present a proposed amended complaint and based on the pleadings, she failed to plead damages.

¶ 40    Even if we were to address the argument, it is without merit. Andersen's primary contention involves Leszynski falsely describing himself as a tax preparer, rather than a tax advisor and that she should be able to seek relief for his negligent advice. Andersen relies on *Khan v. BDO Siedeman LLP*, 408 Ill. App. 3d 564 (2011) for support. *Khan* involved a claim against an investment banker for negligent tax advice that resulted in the plaintiff having increased tax liability. The investment banker tried to escape liability by arguing he could not be sued for accounting malpractice, being neither an accountant nor a professional tax preparer. The trial court disagreed, finding that a person does not have to be an accountant to incur liability for negligent tax advice. *Id.* at 602. Thus, Andersen contends, she could seek damages against Leszynski regardless of whether he described himself as a tax preparer.

¶ 41    Unlike the investment banker in *Khan*, Leszynski is not trying to escape liability based on his title as a tax preparer rather than a tax advisor. Leszynski acknowledges he erroneously advised Andersen that she could deduct her stock trading losses from her attorney income. Unlike the defendant in *Khan*, this advice resulted in Andresen paying less—not more—in taxes than she otherwise would have paid but for the negligence. Moreover, the trial court noted that Andersen

made no prior allegations or did not disclose anything in discovery related to stock trading losses. Thus, she is unable to plead and prove she incurred damages by relying on his tax advice.

¶ 42                                    Dismissal With Prejudice

¶ 43    Andersen contends the trial court erred in dismissing her complaint with prejudice. She maintains that she should have been permitted to cure purported deficiencies in count II and, as to count I, allowed to clarify that (i) Leszynski was a tax advisor rather than a tax preparer and (ii) he was negligent in advising her she could deduct stock trading losses from her income.

¶ 44    In determining whether to allow an amendment, the court considers whether (i) the proposed amendment would cure the defective pleading, (ii) the other parties would be prejudiced or surprised, (iii) previous opportunities to amend, and (iv) timeliness. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). We review the dismissal with prejudice for an abuse of discretion. *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009).

¶ 45    As a preliminary matter, we note that contrary to Andersen's contention in her brief, the trial court did not dismiss count II of the complaint with prejudice. Only after the trial court granted summary judgment on count I and no claims remained outstanding did the court dismiss the complaint with prejudice. Andersen could have, but did not, file a motion to amend count II. Instead, in her response to Leszynski's motion to dismiss, Andersen requested the court consider allowing her to amend count II as an alternative to dismissal. She submitted exhibits to demonstrate that pleading deficiencies could be cured. Similarly, in her response to Leszynski's motion for summary judgment, Andersen asked the court to allow her to amend her complaint. But in both instances, Andersen failed to provide the trial court with a proposed amended complaint from which it could determine whether the *Loyola Academy* factors had been met. This precluded the trial court from addressing Andersen's request. *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1054-55

(2009) (plaintiff's failure to tender proposed amended complaint significantly diminishes court's ability to analyze factors for determining whether to grant leave to amend). Thus, the trial court reasonably exercised its discretion in denying Andersen's request for amendment after issuing its summary judgment ruling.

¶ 46    Andersen relies on *Evans v. United Bank of Illinois*, 226 Ill. App. 3d 526, 532-35 (1992) to argue we should reverse and remand to allow her to amend her complaint. Unlike Andersen, the plaintiff in *Evans* provided the proposed amendment to the trial court. Based on that, the appellate court determined the proposed amendment would have cured the pleading deficiency. Andersen never filed a proper motion for leave, including the proposed amendment, and nothing in the record aids this court in determining that an amendment would cure the pleading deficiencies.

¶ 47    Affirmed.